## No. 8161.

### M. M. ADA CALHOUN AND HUSBAND VS. LIONEL L. LEVY ET ALS.

A mere auxiliary proceeding, by which a third person comes in by way of injunction, to protect his property from being seized and sold under a judgment to which he was not a party, is not removable, under the Act of Congress of March 3d, 1875, from the State to the Federal Court. Affirming Watson vs. Bondurant, 30 An. 1.

Under the laws creating the Parish of Grant, a judgment previously rendered by the District Court of the Parish of Rapides, cannot be revived by the same Court. It is the Court of the Parish of Grant, to which the suit, in which the judgment was originally rendered, is transferred, that has jurisdiction of the revival.

Article 3547, C. C., under which judgments are revived, did not provide an exclusive mode of preventing the prescription of such judgments. Affirming 30 An. 1071.

It is urged on the Rehearing that the citation in the revival suit, though brought before an incompetent court, interrupted the prescription of the judgment. The Court does not pass upon this point and leaves the parties at liberty to raise the issue in some other proceeding, but strikes from its original decree that portion which sustained the plea of prescription.

APPEAL from the Twelfth Judicial District Court, parish of Grant. *Barbin*, J.

### *J. P. Hornor* and *Francis W. Baker* for Plaintiffs and Appellees:

An application for removal of a cause made in due time and in due form, under the Act of Congress of 1875, by a citizen of another State, should be granted.

Unless one have an actual and real interest which he pursues, he cannot be heard attacking the title of another. Code of Practice, 15.

A judgment rendered by the District Court for the parish of Rapides, in 1868, against one residing in that portion of the parish, afterwards made a part of Grant parish, could only be executed or revived after the parish of Grant was organized by the District Court of the parish of Grant. Act 82 of 1869. Act 26 of Extra Session 1870. Act 39 of 1871. Act 78 of 1873. Hammett vs. Sprowl, 31 An. 325; 32 An. 309.

Any attempted revival of such a judgment by the District Court of the parish of Rapides, after the organization of Grant parish, was void, the Court being *coram non judice*. Same authorities.

If the District Court of Grant was not given jurisdiction over such cases, still the District Court of Rapides, having been divested of all jurisdiction thereover, there is a *casus omissus* with respect to such cases, which the Legislature alone could have supplied. Chapman vs. Nelson, 31 An. 347.

Calhoun and Husband vs. Levy et als.

Judgments not revived in accordance with C. C. 3547 (R. S. 2813), are prescribed by the lapse of ten years.

A judgment rendered by a court without jurisdiction, is absolutely void, and such nullity may be set up by any person, whenever and wherever it is sought to be enforced. 23 An. 779; 26 An. 127; 28 An. 744; 24 An. 277; 27 An. 630.

*R. J. Bowman* and *R. A. & R. P. Hunter* for Defendants and Appellants:

The Court which rendered the judgment, sought to be revived, is that which has jurisdiction of the suit to revive. C. C. Art. 3547, Act 1853, $250.

The jurisdiction is unchanged by the change of residence of the debtor to another parish, or by the creation subsequent to the rendition of a judgment of a new parish carved out of the territorial jurisdiction of the original court, in which new parish the debtor resides. 23 An. 594; 27 An. 51; 30 An. 961; 31 An. 346.

The expressions contained in the Acts of 1869, No. 82, creating the parish of Grant, and the amendatory Act of 1870, No. 26, do not vest the District Court of the parish of Grant with the jurisdiction to revive a judgment rendered by the District Court of the parish of Rapides, out of which the parish of Grant was created.

A suit to revive a judgment, is merely incidental to the original suit, "a graft upon it" must be brought in the Court which rendered the judgment, and cannot be removed to the U. S. Circuit Court. Bank vs. Turnbull, 16 Wall. 190; Barrow vs. Hunlongg, U. S. 80.

The judgment of revival cannot be attacked upon the ground, that the Court, which rendered it, had no jurisdiction, when the debtor himself on whom citation was served, raised no such question, but by making default, joined issue in the suit to revive and against whom on that issue judgment has been rendered.

Nor can the vendee, in a simulated sale by the debtor, raise any question as to the validity of the judgment and judicial mortgage against the debtor; if the sale is simulated, the vendee is without interest. 2 An. 367; 30 An. 947; 2d H. D., p. 1031, No. 1.

*Miller, Finney & Miller* on same side, on the rehearing:

First—The citation from an incompetent court interrupts prescription on the action to revive. C. C. 3518.

Second—Whether *liberanda* or *acquirendi causa*, citation from an incompetent court interrupts. C. C. 3351.

Third—The prescription of judgments is found in the Code under the head of prescriptions *liberanda causa;* it is subject to the general rules of prescription, and is like other prescriptions liable to be interrupted by citation from an incompetent Court. Succession of Patrick, 30 An. 1071.

Fourth—Prescription is predicated on an abandonment presumed from the silence of the party. Troplong, de la Prescription, vol. 1, p. 344.

Fifth—Such a presumption does not obtain where one has sought by action to judicially enforce his rights.

Sixth—Our Courts have pushed the principle to the point of holding that even a defective citation interrupts. The theory upon which the doctrine rests, is that non-action not erroneous action gives rise to the presumption of abandonment. Satterly vs. Morgan, 33 An. 849.

Seventh—If citation from an incompetent court does not interrupt prescription of the action to revive, a judgment creditor is alone submitted to a rigorous and exceptional rule not written in the laws, and entailing on him a punishment for an error of legal judgment which is visited on no other creditor.

Eighth—He is therefore in consequence of the judicial recognition of his debt a judicial outcast—debarred of a protection given to every other form of debt, even an unliquidated and open account.

82

The opinion of the Court was delivered by

LEVY, J. On the 24th of November, 1868, Lionel L. Levy obtained judgment in the District Court of the parish of Rapides against Meredith and William S. Calhoun for the sum of $5250, with eight per cent per annum interest thereon from 1st of February, 1867. On the 7th of June, 1878, at the suit of said Levy, this judgment was revived by judgment of the District Court of the parish of Rapides and the original judgment was reinscribed and that of revival inscribed in June and September 1868. On the 7th of May, 1873, an act was passed before Andrew Hero, notary public, in which it was declared that William S. Calhoun sold to his sister, plaintiff herein, for the consideration of thirty-five thousand dollars, his entire interest in the succession of his mother. Levy, treating this sale as a simulation, had execution issued on his judgment, directed to the sheriff of Grant parish, and seized thereunder certain property embraced in the sale of W. S. Calhoun to his sister, as the property of said W. S. Calhoun, and the same was advertised for sale. The plaintiff, M. M. Ada Calhoun, and her husband, G. W. Lane, sued out a writ of injunction restraining the sheriff from making the advertised sale, alleging her ownership of the property seized and averring that Levy's judgment was improperly revived in the parish of Rapides, and that it is prescribed, and also that the "judgment has never been recorded and reinscribed and no longer bears upon the property." Defendant, in his answer to plaintiff's petition, made a general denial, and specially averred the facts of the rendition, recordation, revival and reinscription of his judgment, and the regularity and legality of all those proceedings. He specifically charged that the conveyance from the brother to the sister was "unreal, fraudulent and simulated, and intended to cover up the property; that W. S. Calhoun at the time was largely in debt and the parties had signed a counter-letter showing the said sale to be unreal and simulated," prayed for twenty per cent general and $550 special damages, that said sale be decreed to be fraudulent and simulated, and for dissolution of the injunction, etc.

On the same day upon which this answer was filed, plaintiff filed a petition, affidavit and bond for the removal of the cause to the United States Circuit Court for the District of Louisiana, on the ground that her husband, G. W. Lane, was a citizen of Dutchess County, State of New York, and that the controversy in this suit was and is wholly between herself and husband, citizens of New York, and L. L. Levy, a citizen of this State. To this petition for removal defendant answered, denying the citizenship of either plaintiff to be in New York, and averring that they are both citizens of Louisiana; he alleged that they have by their injunction suit sought the jurisdiction of the State court, and cannot now decline it, and that they cannot remove an injunction suit—a

mere auxiliary proceeding, and that W. S. Calhoun, under the allegations of defendant's answer, is a necessary party to the controversy, and that he is a resident of Grant parish, where the suit is now pending. At the September term of court there was a continuance granted, and at the next, December term, defendant filed a peremptory exception, alleging that the petition disclosed no cause for removal, this being an injunction suit, which could not originally have been brought in the United States Circuit Court, and could not be removed to that court from the State court. This exception was sustained by the District Judge, and the application for removal denied.

We will first consider the correctness of the ruling of the court *a qua*, denying the application for removal.

The question involved is settled in the case of Watson vs. Bondurant, 30 An. 1, where it is held that a mere auxiliary proceeding, by which a third person comes in by way of injunction, to protect his property from being seized and sold under a judgment to which he was not a party, is not removable, under the Act of Congress of March 3, 1875, from the State to the Federal court; and in commenting on the case of Bank vs. Turnbull, 16 Wallace, 190, this Court said : "If, therefore, the proceeding on the part of Turnbull & Co., by whatever name it may be called, was not removable under the act of 1867, as the court expressly decided it was not, it is because a *suit* means an original suit, not an auxiliary, dependent, supplementary proceeding, by which a third person interferes to prevent the sale of his property, seized under execution, in satisfaction of a judgment in the original suit, to which he was a stranger. If such a proceeding was not a *suit*, within the meaning of the act of 1867, and, therefore, was not removable, there is no logic by which it can be shown that the proceeding on the part of Watson in this case is any suit of a civil nature, at law or in equity, within the terms of the act of 1875, and that is, therefore, removable under that act." Goodrich vs. Hunton, 29 An. 372; 4 Cranch, 169; 1st Otto, 254. The application for removal was, in our opinion, properly refused.

There remains to be considered whether the judgment, under which the execution was issued and the seizure made, was legally obtained in a court having jurisdiction, and whether the original judgment has been prescribed for want of proper revival.

It is contended by defendant that the court which rendered the judgment, sought to be revived, is that which has jurisdiction of the suit to revive; that the jurisdiction is unchanged by the change of residence of the debtor to another parish, or by the creation, subsequent to the rendition of a judgment, of a new parish carved out of the territorial jurisdiction of the original court, in which new parish the debtor resides; and that the expressions contained in the Acts of 1869, No. 82,

creating the parish of Grant, and the amendatory Act of 1870, No. 26, do not vest the District Court of the parish of Grant with the jurisdiction to revive a judgment rendered by the District Court of the parish of Rapides, out of which the parish of Grant was created.

It is true that, under the Act of 1853, No. 274, the citation to a judgment debtor, in an action of revival, is required to be issued from the court which rendered the judgment; but this right or authority may be vested by, statutory enactment in courts other than those which rendered the judgment, and within whose territorial jurisdiction the judgment debtor may reside, as was distinctly held in the case of Hammett vs. Sprowl, 31 An. 325. Let us see if this right and jurisdiction have in the present case been conferred upon the District Court of the parish of Grant, of which the judgment debtor is a resident, and within whose territorial limits he resided when the original judgment was rendered. Section 8 of Act No. 82, of session of 1869, (under which act the parish of Grant was created) provides : " That it shall be the duty of the clerks of the parishes of Winn and Rapides, immediately after the passage of this act, to transmit to the clerk of the District Court for the parish of Grant, all petitions, answers, documents and papers appertaining to suits wherein the defendant or defendants reside within the parish of Grant."

Act No. 26 of the extra session of 1870, amending the act of 1869, creating said parish, further provides: " That it shall be the duty of the clerks of the District Courts of the parishes of Rapides and Winn, immediately after the passage of this act, to transmit to the clerk of the District Court for the parish of Grant, all petitions, answers, documents and papers appertaining to suits wherein the defendant or defendants reside within the parish of Grant, and also all petitions, orders, bonds and other papers relating to successions, if the administrators thereof reside and the property of such succession be situated in the parish of Grant, and also all papers and matters relating to the tutorship of minors, wherein they, or a majority of them, reside in the parish of Grant; copies of all such suits or papers to be retained in the office of the clerks of the District Courts of the parishes of Rapides and Winn, and the original sent to the parish of Grant. All suits, any successions, whether judgment be rendered therein or not, are to be transmitted, in accordance with this act."

Section 2 of this act, imposes a fine upon the clerk refusing or neglecting to *transfer* said suits, papers, etc., within thirty days after the promulgation of the act. Section 4 enacts : " That all actions taken and judgment rendered after the passage of this act to establish the parish of Grant, dated 4th of March, 1869, shall be null and void, and consent shall not take away the jurisdiction of the court to try such cases contrary to this act, except when there is an equal number of

the heirs and value of the property in each parish as the case may be; then it shall be settled by the courts, if the heirs disagree."

The wording and phraseology of this act is neither elegant nor perspicuous, but a careful consideration of all its features and taking the various sections in context, enable us to arrive at its unmistakable meaning and intention.

The case of Hammett vs. Sprowl, above referred to, was a suit for a revival of a judgment rendered by the District Court of the parish of Natchitoches, the defendants residing in the parish of Red River. The revival suit was brought in Red River. The law, under which the District Court of Red River took jurisdiction of the suit, is Act No. 78 of 1873, which reads : "It shall be the duty of the clerk of the district and parish courts of Bienville, Bossier, DeSoto, Caddo and Natchitoches, to transmit forthwith to the clerks of the district and parish courts of the parish of Red River, all petitions, answers, documents and papers, appertaining to suits wherein the defendant or defendants reside within the parish of Red River, whether said suits be settled or unsettled; and also it shall be their duty to likewise forthwith transmit as above, all mortuary proceedings had in successions where the deceased died within the limits of the parish of Red River, or where his principal property is situated therein." Section 2 : " The district and parish courts of the parish of Red River shall have as full and complete jurisdiction over the suits and successions so transferred, as the said courts of the different parishes from whence the same were transferred as now under the law."

In construing this statute, the Court in that case said : " We have quoted the statute which expressly gives to courts of Red River, jurisdiction over the suit sought to be revived in this case. It puts the Red River court in the place and stead of the Natchitoches court, vesting it, as regards this judgment, with the jurisdiction of the latter. Now, what was, under existing laws, the power of the Natchitoches courts as regards this judgment ? It was the exclusive right to *enforce* and to *revive* it. After the passage of that statute the court at Natchitoches could no more revive that judgment than it could enforce it by *fi. fa.* We regard a proceeding to revive a judgment not as a new suit, but simply as a proceeding in the same suit, to continue and keep alive a judgment rendered therein, and to furnish proof that it has not been satisfied or extinguished. But, if it were considered to be a new and substantive suit, it is manifest that it would have to be brought in Red River, where all the defendants reside. So, taking either horn of the dilemma, the result is the same."

The act relating to the parish of Grant requires "all suits, any successions, whether judgment be rendered therein or not," to be transmitted from the parishes of Rapides and Winn to Grant, where the

defendants reside, or the property of successions, etc., is situated in the latter. The word transmit was evidently regarded by the law-makers, as affects this act, as being synonymous with transfer, for, in the second section, they say that the District Judge shall " fine said clerk so refusing or neglecting to *transfer* said suits, papers," etc.

Now, what is the legal and accepted signification of the *transfer* of suits, etc. ? It involves the jurisdiction, control, direction, necessary proceedings to be had to carry them to definitive settlement, to full and complete satisfaction. It will hardly be contended that pending suits and unsettled successions were merely to be transmitted to the courts of Grant parish and there held for safe-keeping, while the court of that parish would be powerless to take any action in them; that the papers and documents themselves were to be kept by the clerk and the suits and successions committed to a dead docket, whence they could not be taken for adjudication or decision. The act of 1870, in our opinion, removed all the causes, suits and successions, falling under the conditions mentioned therein, from the parish of Rapides; divested the courts of that parish of all further jurisdiction and control over them, and substituted the parish of Grant, as to such jurisdiction and control, in the stead of the parish of Rapides, vesting the former with all the jurisdiction, authority and judicial power which, before the passage of that act, had attached to the Rapides court.

The judgment of revival being null, the plea of prescription was properly maintained and the injunction properly perpetuated. Under this view of the case, the question of simulation raised by the defendant herein, whose claim as a creditor has been extinguished, cannot be considered in this action between the parties hereto.

The judgment of the lower court is affirmed with costs.

### ON APPLICATION FOR REHEARING.

POCHÉ, J. After a mature consideration of defendant's application to reopen this cause, it is ordered that a rehearing be granted in the case, exclusively on the following question : whether prescription on defendant's judgment was interrupted by service of the citation for the revival of said judgment, issued by the District Court of the parish of Rapides.

### ON REHEARING.

FENNER, J. We granted a rehearing in this case solely upon the question of prescription of defendant's judgment.

The substantive relief sought by plaintiff in her suit herein, was a perpetual injunction against further proceedings under a writ of *fieri facias* issued upon the judgment of defendant, Levy, against W. S. Cal-

houn. This is the sole prayer of her petition. One of several grounds upon which that relief was based, was the charge that the judgment referred to was prescribed; but there were other grounds ample to maintain the relief—notably, that the judgment was more than ten years old and had never been revived. We held that the proceeding and judgment of revival were absolute nullities, because taken in a court having no jurisdiction over the question, and that the judgment, therefore, had not been revived. This was, of course, sufficient to sustain the injunction restraining the execution.

Defendant, however, in his answer affirmed the validity of his judgment and of the proceedings of revival, and prayed for judgment dissolving the injunction with damages, declaring the title of plaintiff to the property seized to be fraudulent and simulated, and that he be permitted to proceed with its sale under his *fi. fa.* To this demand, the plaintiff filed a plea of prescription to the judgment relied on by defendant, and excepted peremptorily, on the ground that defendant not being a creditor and having no lien or mortgage on the property, had no right or interest to attack the title of plaintiff.

The final judgment decreed that the writ of injunction be maintained and perpetuated, and "that the plea of prescription filed by the plaintiff to the judgment and claim of the defendant be sustained." Our former decree affirmed this judgment. Defendant claims that he is injured by that portion of the judgment which maintains the plea of prescription, because it would operate as *res judicata* against him in a subsequent action to revive his judgment, contending that the prescription of his judgment, and of his action to revive the same, was interrupted by the citation issued and served in his former revival suit, although brought before an incompetent court.

If the prescription of judgments and of actions to revive them, is subject to the same modes of interruption as apply to prescription of all other rights and actions, it is clear that citation even before an incompetent court, does operate such interruption. C. C. 3518, 3551.

It has been held by our predecessors that the statute of 1853, now Art. 3547, did not provide an exclusive mode of preventing the prescription of judgments, but left such prescription subject to all the other modes of interruption provided by law. Succession of Patrick, 30 An. 1071.

We fully concur in the doctrine of that case. The act of 1858, now embodied in Art. 2278 C. C., provides that " parol evidence shall not be received to prove any acknowledgment or promise to pay any judgment, sentence or decree of any court, in or out of the State, for the purpose or in order to take such judgment, sentence or decree out of prescription, or to revive the same after prescription has run or been com-

pleted." It is impossible to reconcile this article with the theory that the mode provided in Art. 3547, is exclusive of other modes of interrupting the prescription of judgments.

If, then, the prescription of this judgment was interrupted by the citation heretofore referred to, the action to revive yet lies under the very terms of the proviso of Art. 3547, which says: "Any party interested in any judgment may have the same revived *at any time before it is prescribed,* by having a citation issued according to law," &c.

We find it unnecessary, in this case, to pass upon the plea of prescription at all, and shall not do so ; but the foregoing considerations demonstrate the propriety of annulling that portion of the judgment appealed from which maintains the plea, leaving parties at liberty to raise that issue in any suit which may hereafter be brought to revive the judgment. Nor, in thus changing our former decree, shall we mulct the plaintiff in the costs of the appeal. The maintenance of the plea of prescription was, in effect, merely a reason for rejecting the reconventional demands of defendant ; and as our decree, as amended, will sustain the entire relief sought by plaintiffs, and will not allow any of the counterrelief sought by defendant, the judgment appealed from remains substantially unchanged. We adopt this course the more readily, because, as this particular question of interruption of prescription was never suggested in this Court until presented in the application for rehearing, we may fairly presume it was not urged in the court *à quâ,* and the plaintiff is, therefore, to blame for the error.

It is, therefore, ordered that our former decree herein be annulled and set aside ; and it is now ordered, adjudged, and decreed that the judgment appealed from be amended by striking therefrom that portion which sustains the plea of prescription filed by the plaintiff to the judgment and claim of the defendant ; and that, in all other respects the said judgment be affirmed, defendant, Levy, to pay the cost of this appeal.