## No. 13,108.

STATE EX REL. MRS. ELEONORE DUCHENNE VS. BOARD OF LIQUIDATION,. CITY DEBT.

### SYLLABUS.

1. A judgment against the city of New Orleans rendered in 1879 for damages· for eviction under the city's warranty obligations tracing back to and re sulting from a contract of sale made a great many years before, is not a' "floating debt" of such a character as to fall under the exceptional provi sions of Act No. 67 of 1884 touching the funding of the city's indebtedness.

2. A judgment of that character rendered in 1879 and registered under the pro· visions of Act No. 5, Extra Session of 1870, not being prescribed at the date of the passage of Act No. 67 of 1884, it was not the duty of the Board of Liquidation so finding it, to go behind that fact and examine and ascertain whether prescription might or might not have run against the judgment later.

IN RE Board of Liquidation applying for *certiorari,* or writ of review, to the Court of Appeals, Parish of Orleans, State of Louisiana.

---

*Branch K. Miller* for petitioner.

---

Respondent judges for themselves.

Submitted on briefs March 20, 1899.
Opinion handed down May 15, 1899.

The opinion of the court was delivered by
NICHOLLS, C. J.  Relator avers that, on June 4th, 1898, Mrs.
Eleonore Duchenne, as surviving widow in community of Paul
Duchenne, and natural tutrix of their minor children, brought suit
against it for a *mandamus* to compel it, under Acts No. 67 of 1884,
and 110 of 1890, to pay, or fund, a certain final judgment for the sum
of one hundred and seventy dollars, with legal interest from judicial
demand (March 4th, 1871), and seventeen dollars cost of court addi-
tional, rendered in a certain suit entitled Jean and Pierre Lamarlere
vs. City of New Orleans, No. 2315, of the docket of the Civil District
Court for the parish of Orleans.

That on August 2nd, 1898, on the day fixed for the return of the
alternative writ, it filed its answer to the same, setting up, in effect,
after pleading the general issue:  First—That under the laws creating
it, and defining its powers, it was without right or authority to fund,
or pay, any judgment against the city of New Orleans, except such as
might have been rendered for or against a year or years prior to 1879;
that the judgment of eviction in the case of Myra Clarke Gaines
vs. P. H. Monsseaux, *et al.,* No. 3662, of the docket of the United
States Circuit Court for the Eastern District of Louisiana, upon
which the judgment described in Mrs. Duchenne's petition was
founded, and by the effect of which the city of New Orleans became
the debtor of her deceased husband, was rendered June 13th, 1879, and
hence was not within the class of judgments which were entitled to be
funded or paid by it; that the latter was without authority of law to
fund the judgment into a bond or bonds, in any event.

Second—That the judgment sued upon had been extinguished by
the prescription of ten years, established by Article 3547 of the
Revised Civil Code, and hence that the same was no longer evidence
of any debt or liability of the city of New Orleans.

That the judgment of the District Court was in favor of plaintiff in
the said suit, in which the *mandamus* was made peremptory, and the
board was ordered to fund or pay the judgment sued upon; that the
case was then by it carried, by appeal, to the Court of Appeals for the
parish of Orleans, which, on the 30th day of January, 1899, affirmed

the judgment of the District Court, which was appealed from, and on the 27th day of February, 1899, refused a hearing.

That the issues involved in the said suit are of paramount import-ance to the Board of Liquidation, the city of New Orleans, and all judgment creditors thereof, especially those who are entitled, or may deem themselves entitled, to the benefits of Acts 67 of 1884, and 110 of 1890.

That in its execution of the mandates contained in said statutes, and the discharge of its duties thereunder, the board has construed them, particularly the former, to mean that no judgment against the city of New Orleans would be either funded or paid by the board, unless it was rendered or based upon a floating debt or claim of the city of New Orleans, which was created or came into existance prior to the year 1879; that the finding of the Court of Appeals is to the effect that the benefits of said statutes extend also, besides those thus described, to any and all judgments in existence against the city of New Orleans at the date of the adoption of Act 67 of 1884, to-wit: July 9th, 1884; that such construction is different from that placed upon it by the board; under which it has retired floating debts or liabilities of the city of New Orleans, amounting to many hundreds of thousands of dollars; all of which has been fully acquiesced in by the creditors of the city of New Orleans, until the contentions made in the present suit; that the said ruling of the Court of Appeals for the parish of Orleans, if maintained, will greatly embarrass the board in the discharge of its duties, and introduce confusion and disorder into the administration of its affairs, and greatly impede or interfere with the discharge of its duty, to the disadvantage of the city of New Orleans, and its judgment creditors; that it is further held by the Court of Appeals that the articles of the Revised Civil Code, fixing the prescription of judgments at ten years, have no application to judgments against the city of New Orleans; that if such be the true interpretation of the law, it would deprive the city of New Orleans of a mode of extinguishing its debts, of which all other persons would enjoy benefit; that there are at present many judgments aggregating many thousands of dollars against the city of New Orleans, which are prescribed, and of which the city is therefore not the debtor, if they are subject to the laws of prescription, but which are valid outstand-ing obligations of the city if the said finding of the Court of Appeals is correct in point of law; that this issue is one of great and imminent

importance and interest to the public, to the city of New Orleans, to its judgment creditors, and to the board, in reference to the duties and powers imposed and vested by the law to the proper, safe and sufficient discharge of which, in reference to judgments in existence for more than ten years, which may be presented to it for payment.

That it is of the highest public importance that the proper construction of said Section 3 of Act 133 of 1880, and Section 2 of Act 67 of 1884, should be determined by the highest court of the State, particularly to ascertain whether or not the privileges of the same are extended to holders of judgments or floating debts, or claims, for 1878 and previous years alone, or whether or not they likewise extend to all judgments against the city in existence at the date of the adoption of the said statute, besides the first named.

That upon whether or not the prescription of ten years applies to judgments against the city, depends the question of the indebtedness of the city on a large number of judgments rendered more than ten years since; that the board believes that this court has already determined that a claim or demand against the city is subject to prescription, the same as a claim or demand against any other person, notably in the case of Conger vs. City of New Orleans, 32 Ann., 1252, *et seq.*, and State *ex rel.* Rubira vs. Board of Liquidation, 35 Ann., 753, and in other cases, and that a like rule should prevail as regards judgments, which are, in law, nothing more than claims or demands judicially ascertained to be due and liquidated as to amount; that in the interest of a uniformity of jurisprudence upon a public question of far-reaching importance, and in order in to the correct determination of the issues in said case, which the board avers have been erroneously determined by the Court of Appeals, this court should require, by *certiorari,* the Court of Appeals to certify the said cause to this court for its review and determination.

In view of the premises the board prays that a writ of *certiorari* issue from this court, directing the Court of Appeals for the parish of Orleans to certify, and to send to it, on a day certain, the full and complete record of all the proceedings in the Court of Appeals in the said case, to the end that the same may be reviewed, determined, and the validity of the same ascertained.

This court, in view of the importance of the issues raised, and of their public character, ordered the record to be sent up as prayed for.

Duchenne vs. Board of Liquidation.

The judgment of the Court of Appeals, whose correctness is questioned herein, was as follows:

"The relatrix seeks, by mandamus, to compel the defendant to pay a certain judgment.

The defense is:

First—That the judgment is not fundable under existing law.

Second—That it is more than ten years old, and, not having been revived, it is extinguished by prescription.

The judgment sued on is one for damages for eviction from property sold by the city, and included in the Gaines case in the Circuit Court of the United States. The date of rendition was June 3, 1879, and registry was duly made in the office of the comptroller of the city of New Orleans in accordance with the requirements of Act No. 5, extra session, of 1870.

The Board of Liquidation was created by Act No. 133 of 1880, for the purpose of liquidating, reducing and consolidating the debt of the city of New Orleans. It was authorized and empowered, by Section 3, to retire and cancel the entire valid debt of the city of New Orleans, except the floating debt created up to the date of the passage of this act, whether represented by bonds of various classes or by judgments.

Act No. 67 of 1884 amended that section by making it 'the duty of the board to retire and cancel the entire debt of the city of New Orleans now in the form of executory judgments, and registered under the provisions of Act No. 5 of 1870, and that which hereafter may become merged into executory judgments and likewise registered, except the floating debt, or claims, created for and against the year 1879 and subsequent years; that it is the full intent and meaning of this act to apply solely the privileges thereof to executory judgments at present rendered against said city, and to such floating debt or claims against said city for 1878 and previous years merged, and to be merged into executory judgments, whether absolute, or rendered, against the revenues of any particular year or years previous to the year 1879.'

It will thus be observed that under the Act of 1880 the entire valid debt could be retired, *except* the floating debt created up to the date of the passage of that act; *i. e.*, April 10th, 1880.

One of the evident purposes of the amendment of 1884 was to allow the funding of obligations anterior to 1879, *excluded* by the terms of

the Act of 1880, and to further that purpose the city was directed to turn over and transfer to the Board of Liquidation all uncollected revenues anterior to 1879, when collected.

But had this been the only purpose, the phraseology of the statute would have been different; it would have been sufficient to say 'judgments rendered, and to be rendered,' for the floating debt or claims for 1878 and previous years.

Instead of that the privileges of the act are extended, in express terms, to 'executory judgments at present rendered,' *and* to the floating debt or claims for 1878 and previous years, 'merged, and *to be merged,* into executory judgment.'

As the last clause specifically mentions claims for 1878 and anterior years *already merged* into judgment, as well as those to be merged, it is clear that this provision was entirely unnecessary had the executory judgments first mentioned been intended to refer to obligations arising previous to 1879.

We may not disregard the plain and positive text of the statute because of the suggestion that it tends to establish an unfair distinction between creditors who had obtained judgments at the time of the adoption of the act, and those who had not, when the claims of both were for the same year.

The phraseology and punctuation of the act are involved, but its meaning is sufficiently evident, and our conclusion is that the board is authorized and required to retire two classes of obligations.

First—All claims against the city for 1878 and previous years upon their being liquidated and merged into judgments.

Second—All the debts for *any* years which had passed into the form of executory judgments, and been registered at the date of the adoption of the act.

The judgment forming the basis of the present demand falls within the second category, and is therefore fundable.

We now reach the plea of prescription.

In 1870 the General Assembly passed a law 'to declare the *effect,* and prescribe the mode of *satisfying* judgments for money against the city of New Orleans.'

By its terms the courts of this State were denied all authority or jurisdiction to issue writs of *mandamus,* or *fieri facias,* to enforce payment of any money judgment against the municipality. In lieu thereof it provided for a registry of final and executory judgments in

the comptroller's office, and declared that they should 'have the effect in law of establishing and fixing the amount of the plaintiff's demand against such corporation."

The only means of satisfaction allowed consists of the money to be specially designated, and set apart, for that purpose, by the City Council, in its annual budget, or specifically appropriated from any unexpended balance to the credit of the budget appropriation for contingent expenses.

The manifest object of this act has been judicially declared to be "to restrict creditors of the city to the ordinary forms in the enforcement of their demands; to protect the property and means of the city from seizure under execution; and to compel judgment creditors to have their judgments registered, so that they might be provided for and paid in their regular order out of the annual budget of each year.'

The registry was a new and peculiar mode of execution substituted for all existing remedies for the execution of judgments. State ex rel. Strauss, 30 Ann., 79; Rousseau vs. City, 35 Ann., 558.

There can be no question that the law regulating the execution of judgments in force at the time when a judgment is rendered, must govern the execution of that judgment; the only question for examination is as to the effect of that law.

The first result is that the only asset that may be subjected to the satisfaction of a registered judgment is the amount appropriated annually in the budget. The next is that the judgment creditor is powerless to do anything to accelerate payment; the courts having uniformly held that the framing of the budget was a discretionary legislative function of the council, not judicially controllable, so long as legal and constitutional provisions were observed. The fact, the duty, of appropriating a sufficient amount out of the annual revenues to pay judgments has been considered as subordinate to the higher and absolute duty of first providing out of the revenues for the necessary alimony or support of the city. 36 Ann., 56; 33 Ann., 79; 37 Ann., 18; 31 Fed. Rep., 537.

It follows from the foregoing that the time at which funds attributable to the payment of judgments become available, depends absolutely on the financial condition of the municipality and the absolute will of the City Council, and that the creditor's sole remaining remedy

is to obtain from the comptroller a warrant on the treasurer *after* the fund has, on due appropriation, found its way in the latter's hands.

But, says the respondent, this can not affect the validity of the plea of prescription, because, according to repeated adjudications, the ability to execute a judgment is altogether apart from its prescriptibility.

It is true, as contended, that it has been held that the enjoining of a judgment, the taking of an appeal, whether suspensive or devolutive,. the issuance of a *fi. fa.,* or even minority, will neither suspend nor interrupt the prescription of a judgment.

The argument urged, might, in consequence, be forcible, were a. revival the only legal means of arresting the current of prescription of a judgment, or were the city in all respects to be assimilated to an ordinary debtor.

But such is not the case.

It is the settled law of this State that a revival is not intended to be an *exclusive* mode of preventing the prescription of judgments, and that the prescription of a debt, evidenced by a judgment, can be interrupted in the same manner as any other debt, provided the acknowledgement of the judgment debt be in writing . Succ. of Patrick, 30. Ann., 1071; Calhoun vs. Levy, 33 Ann., 1297; Calhoun vs. Levy, 34 Ann., 414; R. C. C., Art. 2278.

Previous to the year 1853 'judgments were imprescriptible. 15 Ann., 650; 30 Ann., 1071.

It was the manifest design of the law of 1853 to reserve to the judgment creditor a method of protecting himself by his own act against a debtor who *refused to acknowledge* a debt not susceptible of being enforced by execution within ten years for lack of property liable to a levy.

It would do violence to the spirit of the statute, and the reason for its enactment, to say that it deprives a creditor of his remedy in cases where the debtor has acknowledged a debt evidenced in the most solemn and dignified form known to the law.

The city is a corporation created by the State, and its rights and obligations, its power to create, and its methods of discharging debts, must be measured by the statutes defining the scope of its corporate authority.

It is therefore competent for the legislature to impose upon the city its fiat as to the nature and extent of the latter's liability for the demands of its creditors, and while abolishing the writ of *fieri facias*

.as a means of execution to contemporaneously declare the status of a claim merged into a judgment.

This, we think, it has done clearly and emphatically by declaring that "final judgment against the city of New Orleans, condemning said corporation to pay any sum of money when the same shall have become executory, *shall have the effect in law of establishing and fixing* the amount of the plaintiff's demand against said corporation."

We do not see how a debt can receive more solemn acknowledgment than is given by that provision.

The next declaration is that, when there is sufficient money in the treasury to pay such judgment, 'it shall be the duty of the comptroller to warrant on the treasurer for the amount due thereon *without any special appropriation* of money therefor by the City Council.'

We look upon this as unmistakably an order to pay an acknowledged debt in due course of municipal administration.

That this view is consonant with the motives of the act seems to be intimated in the language of the Supreme Court in the Strauss case *supra.*

The creditor who has recovered judgment against an executor or administrator is not permitted to seize and sell, under execution, the property which belonged to the deceased, nor to enforce payment otherwise than in due course of administration.

The creditors of the city of New Orleans may sue and obtain judgment, but the city has no property or rights not exempt from seizure under execution, because the statute forbids the issue of the execution against the city.

The city can pay its debts only out of its revenues, whether derived from taxes or from other sources; and if the city could be interfered with by seizure under execution in the collection and control and disbursement of its revenues, as current exigencies require, the city government could not be administered; could no longer subsist.

The second and third sections of the act provide for the registry of all final judgments against the city, and for their payment out of the annual budget; *that is, in due course of administration by the administrators chosen and appointed by law.*

In this connection it must be borne in mind that under our jurisprudence, the effect of an acknowledgment of a claim against a succession is to suspend prescription during the entire pendency of the administration.

Duchenne vs. Board of Liquidation.

The registry under statutory direction of a judgment debt on the city's records as a liability can hardly be considered as less solemn than the placing on an account of a succession debt.

As illustrative of the principle involved herein, the case of Gasquet vs. Board, dealing with the Act No. 36 of 1873 in reference to the payment of school certificates, is instructive.

The court held that as no writ of *fi. fa* could lie against school moneys, and as the certificates were not payable at any fixed date, but out of particular funds, and only when such funds came into the treasury, prescription did not begin to run until such funds came into the treasury.

To the same effect are the rulings in Fernandez vs. City, 46 Ann., 1130; Johnson vs. City, *Id.*, 714, and Wadsworth vs. City, 48 Ann., 886. In reference to claims against the revenues of particular years, in the first mentioned case the court said: 'These claims are not subject to prescription that the judgment applied for can interrupt.'

'The payment being suspended and made conditional to there being funds in the treasury, the plea is ineffective until a right of action arises."

The reasoning applicable to a mere claim should apply with greater force to a solemn judgment registered according to law on the public records of the city, when its payment is also made contingent upon the advent in the treasury of a certain fund.

The relatrix has not slept upon her rights, and it is not shown that there have been at any time funds in the treasury applicable to the payment of her judgment."

OPINION.

The judgment sought to be funded, which has given rise to this controversy, is declared by the Court of Appeals to have been based upon a claim against the city of New Orleans for damages for eviction from property sold by it and included in the Gaines cases, in the Circuit Court of the United States, to have been rendered in June, 1879, and to have been registered in the office of the comptroller of the city in accordance with the requirements of Act No. 5, extra session of 1870.

We are of the opinion that the judgment of the Court of Appeals, directing the Board of Liquidation to fund the judgment, is correct.

The second Section of Act No. 67 of 1884, authorized and required. and made it the duty of the Board of Liquidation to retire and cancel the entire debt of the city of New Orleans *then* (July 9th, 1884) in the form of executory judgments, and registered under the provisions of Act No. 5 of 1870, and that which may become merged into executory judgments, and likewise registered, except the floating debt or claims *created for and against the year 1879 and subsequent years.*

The General Assembly declared "that it was the full intent and meaning of the act to apply solely the privileges thereof to executory judgments *then rendered against the city,* and to such *floating* debt or claims against said city for 1878 and previous years, merged, and to be merged into executory judgments whether absolute or rendered against the revenues of any particular year or years previous to the year 1879."

We do not think a judgment against the city for damages for eviction rendered against it under its warranty obligations, tracing back to and resulting from a contract of sale (made a great many years before) is a "floating claim" of such a character as to fall under the exceptional terms of the act.

The obligation is not one which was created for or against any particular year or years.

It was a debt of a kind, which, when ascertained and declared by judgment, was protected from impairment through adverse legislation and against whose aggressive, hostile, present enforcement, the funding plan and law were specially designed to guard.

When presented for funding, the claim was in the form of an executory judgment, existing at the date of the Act of 1884, and registered under the provisions of Act No. 5, extra session of 1884. It, therefore, fell precisely under the terms of Section 3 of Act 67, of 1884.

We think that for the same reason that the judgment falls directly under the terms of that law, the Board is not in a position to question the rights of the creditor to fund the claim on the ground of prescription.

It was not prescribed at the date of the passage of Act No. 67 of 1884; it was then an existing, valid, registered judgment, and the direction of the law makers was express to the Board of Liquidation that it should fund all such judgments.

The board so finding it, was not required to go behind the fact to

examine and ascertain whether prescription might, or might not, have subsequently run against the judgment.

The judgment of the Court of Appeals being, in our opinion, correct, it is hereby affirmed.

MR. JUSTICE MONROE recused, having tried the case in the court of first instance.