(87 South. 714)

No. 23001.

## LITTLEFIELD v. CITY OF SHREVEPORT.

(Feb. 28, 1921.)

*(Syllabus by Editorial Staff.)*

**Limitation of actions ⬤⟵48(6)—Prescription ran on city's bond from date it was payable.**

Under Civ. Code, art. 3540, where a city issued its bonds payable October 1, 1879, with interest at 8 per cent., pledging its faith and property to performance of the obligation, and ordering a tax to be levied annually to pay interest and to create a sinking fund, prescription began to run against suit on such bond on October 1, 1879, the failure of the city to provide the promised sinking fund not preventing such running of limitations, being mere passivity which cannot arrest the course of

prescription, while, under article 3550, good faith is not required on the part of the person pleading prescription.

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

Action by Mrs. J. A. Littlefield against the City of Shreveport. From judgment dismissing the suit, plaintiff appeals. Affirmed.

J. T. Tanner, J. S. Atkinson, and Crain, Benoit & Jackson, all of Shreveport, for appellant.

Lewell C. Butler and B. F. Roberts, City Atty., both of Shreveport, for appellee.

PROVOSTY, J. Plaintiff asks personal judgment against the city of Shreveport upon a bond which, omitting mere formal parts, reads:

"The mayor and trustees of the city of Shreveport, acknowledge to owe to ——— or bearer one thousand dollars lawful money of the United States which the said mayor and trustees promise to pay at the controller's office in the city of Shreveport on the 1st day of October, A. D. 1879, with interest at the rate of eight per cent. per annum, payable semiannually, at the Bank of New York in the city of New York, on the presentation of the coupons hereto attached.

"To the performance of this obligation the faith and property of the city of Shreveport are irrevocably pledged and a tax is ordered to be levied upon all of the taxable property of said city annually to pay the said interest and create a sinking fund. This bond is issued in obedience to an ordinance of the mayor and the board of trustees of said city, adopted on the 3d day of June, 1869, for the purpose of raising means to make such improvements as the growth of the city demands."

On the back of the bond is the following:

"This bond is one of two hundred of like denomination, and the ordinance under which they are issued, provides for their payment as well as the payment of the interest as required by law, by setting apart from the revenues of the city the sum of thirty-six thousand dollars, annually, to pay said interest punctually, and to create a sinking fund to pay the principal."

The prescription of five years is pleaded, the suit not having been filed until 1917.

Plaintiff contends that this prescription could begin to run only from the time the sinking fund mentioned in the bond had been provided, and that this was never done.

In support of that proposition plaintiff quotes County of Lincoln v. Luning, 133 U. S. 530, 10 Sup. Ct. 363, 33 L. Ed. 766; Barnes v. Turner, 14 Okl. 284, 78 Pac. 108, 10 L. R. A. (N. S.) 478, 2 Ann. Cas. 391; Wetmore v. Monona Co., 73 Iowa, 88, 34 N. W. 751; Gasquet v. Board of Directors of City Schools, 45 La. Ann. 342, 12 South. 506; Fisher v. Board of School Directors, 48 La. Ann. 1078, 20 South. 163; and State ex rel. Duchenne v. Board of Liquidators, 51 La. Ann. 1151, 26 South. 55.

Prescription begins to run "when the engagement is payable." C. C. art. 3540.

The Luning Suit, supra, was on coupons which by an act of the Legislature were payable when money came into the possession of the treasurer, and the court held that prescription did not being to run until money came into the possession of the treasurer.

In the Barnes Case, supra, the treasurer was ordered to pay "one year after date, from any moneys which shall arise from special levy," etc.; and the court held that the prescription did not begin to run until the moneys wherewith to pay arose from the special levy.

Evidently, a debt payable as, or when, money shall come into the treasury, or, which is the equivalent, only out of some particular fund which is to arise, is not payable until the money comes or the fund arises, and prescription does not begin to run until then.

We have not at hand the report of the Wetmore Case, supra, but from the note of it in 10 L. R. A. (N. S.) 478, it, too, was a suit on a warrant payable out of a particular fund to arise.

Between such cases as those and one like the present involving an unconditional obligation to pay at a fixed date, coupled with an additional engagement to provide a fund, the difference is fundamental. It is the same difference which the Negotiable Instruments Act (Act 64, p. 147, of 1904, § 3) makes between "an indication of a particular fund out of which reimbursement is to be made," and "an order * * * to pay out of a particular fund." The bond in this case was an unconditional engagement to pay at a fixed date, and the promise to levy a tax and hold the proceeds as a sinking fund was a mere accessory obligation, very much as any other kind of accessory obligation (a mortgage for instance) might have been devised for adding to the ~robability, or the assurance, that the engagement of the bond would be met. The pledge of the good faith and property of the city of Shreveport was, of course, mere verbiage. The good faith of every debtor is pledged; and, in the sense in which "the property of the city of Shreveport" was pledged in this bond, so is his property. C. C. arts. 1901, 1903, 1968.

Counsel transcribe in their brief that part of the decision in the Luning Case, supra, wherein the court refers to Underhill v. Sonora, 17 Cal. 172, and Freehill v. Chamberlain, 65 Cal. 603, 4 Pac. 646. We have not at hand the report of these cases, but from what the court says of them we gather that in the one the Legislature had "set apart property out of which the money was to be paid at a given time if not paid sooner," and that the creditor waited for this property thus set apart to materialize; and in the other that the coupons involved in it were payable "as fast as the money should come into the treasury"—so that the debts were not payable until the fund out of which they were to be paid had materialized, and prescription naturally did not begin to run until then.

Counsel cite in their brief a number of cases from other states as having approved the doctrine of the Luning Case, supra. The

only one of these other cases of which we have the report at hand is Berkey v. Board of Commissioners, 48 Colo. 117, 110 Pac. 197, 20 Ann. Cas. 1109; and we find that in its facts it is not in point. It holds that as the bonds were not prescribed the interest coupons were not; and that laches did not have the effect of precluding the remedy of mandamus, since no other was available. However, the court did go on and say that when a particular fund is to be created by a municipality for the payment of a debt prescription does not run until the fund has been created.

Our own decisions cited supra do not bear plaintiff out.

In the Gasquet Case the court said:

"Act 36 of 1873 makes it very clear that the claims evidenced by these certificates were not payable absolutely or at any particular time. They are payable only out of the revenues of the years for which they are issued, and only when said revenues are collected and in the manner therein provided; and the act further declared that 'No writ of fi. fa. or mandamus shall lie for seizure of any school moneys, or to direct or enforce its paying out otherwise than in the manner and sequence required in this act.'

"This law formed a part of the contracts out of which the claims arose, and deprived the claimants of any legal remedy to enforce payment except out of particular revenues when actually collected and covered into the treasury.

"The case is very much stronger and clearer than that of King Bridge Co. v. Otoe Co., 124 U. S. 459, 8 Sup. Ct. 582, 31 L. Ed. 514, in which the Supreme Court of the United States held that county warrants, payable only when there are funds in the treasury applicable thereto, are not actionable until the money for its payment is collected, and therefore not subject to the statute of limitations except for the same time."

In State ex- rel. Duchenne, supra, the decision is based upon the express provision of a special statute, and is therefore not in point.

In the Fisher Case, supra, the question of prescription was not involved.

Counsel say that by not providing the promised sinking fund out of which to pay the debt the city committed a wrong, and that to allow the prescription would be to allow her to take advantage of her own wrong; and counsel cite the case of Hyman v. Hibernia Bank, 139 La. 419, 71 South. 598. That decision makes a clear distinction between the activity, or machinations, of a debtor for lulling his creditor into a false security, and his mere passivity. Mere passivity cannot arrest the course of prescription. "Good faith not being required on the part of the person pleading this prescription," etc. C. C. art. 3550. The city did nothing to lull plaintiff into a false security or to hinder plaintiff in any way.

Our legislation does not make a different rule of prescription for municipal corporations, and if anything in principle does we know not of it. Inability to bring suit would —by force of the principle non valentem—but this suit could have been brought just as well the day after the city of Shreveport failed for the first time to levy the tax promised in the bond, this many years ago, as now.

The judgment below sustained the prescription, and dismissed the suit.

Judgment affirmed.