**BRADY v. FALGOUT et al.**

No. 489.

District Court, E. D. Louisiana,
New Orleans Division.

Dec. 22, 1941.

Cobb & Saunders and Morris Wright, all of New Orleans, La., for plaintiff.

Milling, Godchaux, Saal & Milling, L. K. Benson, and M. T. Woodward, Jr., all of New Orleans, La., for defendants.

CAILLOUET, District Judge.

On September 7, 1937, plaintiff Mrs. Ione Edwina Brady, wife of Egbert Leigh Giles, a citizen of the State of Virginia, and alleging that she had "no adequate remedy at law", filed her suit in equity, seeking to have annulled, rescinded, and declared "without any legal effect whatever", two certain authentic acts of sale (in her bill of complaint fully detailed and duly certified copies whereof, respectively, she annexes to and makes part of said bill), so far as concerns her "undivided one-half interest" in and to the certain real property in said two acts minutely described.

On September 24, 1937, the persons made parties defendant (all citizens of Louisiana) did first move to dismiss such suit, on the following two grounds, viz.:

1. The bill of complaint discloses no right or cause of action.

2. It presents no cause which is cognizable in equity, and is lacking in equity.

Then, in the alternative, and only if a cause of action is actually found alleged,

534

the prescription of five years *liberandi causa*, provided for by Article 3542 of the Louisiana Civil Code, was pleaded.

Such motion to dismiss was finally presented to this court for a hearing thereon and due disposition thereof, on December 3, 1941, or over four years after the filing of both suit and motion to dismiss.

By her said bill of complaint the petitioner alleged:

1. That on March 10, 1931, she executed her power of attorney (a certified copy thereof being annexed to her bill, as part thereof) designating her father, Edwin P. Brady, as her agent and attorney in fact to sell, transfer and convey all or any part or parts of her real, personal or mixed estate in the State of Louisiana (being none other than that inherited from her deceased mother) and to receive the price thereof.

2. That "within the past thirty days" (which was, therefore, over six (6) years subsequent to the execution of said power of attorney), petitioner learned that the certain real property described in the two notarial acts of sale at issue in her suit, had been acquired by her said father in 1910.

3. That this acquisition took place during the existence of the community of acquets and gains between her said father and petitioner's now deceased mother, and that petitioner inherited her said deceased mother's undivided one-half share and interest therein when said partner in community died intestate, in November, 1930.

4. That "within thirty days from the date of the filing of" her said complaint, petitioner additionally learned that her said named father had executed (over five years before, or that is to say on May 25, 1932, when then and there "purporting to act by virtue of the aforesaid power of attorney") a notarial act of sale, a duly certified copy whereof she annexes to her bill as part thereof; and that by the terms of said act, her said agent, Edwin P. Brady "did purport to sell and convey unto Jacob Bernstein for a stated consideration of five hundred and eighty ($580.00) dollars cash", the real property already referred to.

5. That "since learning of the execution of said pretended sale, petitioner has also learned that said purported sale was not in truth and in fact a sale; and that no consideration whatever was paid to or received by petitioner, either personally or through her said agent, for the supposed transfer of her interest in said property; that her said agent acted beyond the scope of his authority in attempting to transfer her interest without consideration; that the purchaser, Jacob Bernstein, knew at the time of said transfer complainant was not to receive, could not receive, and did not in fact receive any consideration therefor, and said conveyance is null and void as to complainant."

6. That on May 27, 1932, "or two days after said purported transfer, Jacob Bernstein did purport to sell and convey for a consideration of eleven hundred and twenty-five ($1125.00) Dollars" unto Tilman J. Falgout, Harris J. Falgout, Octave Hogan and Joseph Hogan, in the proportion of an undivided one-fourth share and interest to each of them, "the property supposedly acquired by him"; and that said "sale" was executed before the same notary and the same two witnesses before whom the Brady-Bernstein transfer of May 25, 1932, had been effected.

7. That "complainant is informed and believes, and, therefore, avers" that the said four named purchasers from Bernstein in the act of May 27, 1932, "knew at all times that the interest of complainant in said property was to be conveyed, and that it had been conveyed to Jacob Bernstein without any consideration whatever to complainant, and that it was contemplated at all times that immediately after the purported transfer to Jacob Bernstein, he would undertake to convey the property to the defendants to effect a divestiture of complainant's interest in said property."

By an examination of the two certified copies of the acts of sale and transfer which were so annexed to and made part of the petitioner's bill, as aforesaid, one finds the following additional facts alleged by the bill, viz.:

1. In the notarial act evidencing the Brady-Bernstein sale of May 25, 1932.

(a) Edwin P. Brady represented himself as acting "individually, and as the duly appointed and qualified Agent and Attorney in fact of Mrs. Ione Edwina Brady, wife of Egbert Giles, * * * duly authorized per power of attorney executed before Frederick C. Marx, Notary Public, * * * on the 10th day of March, 1931, hereto annexed and made part hereof for reference."

(b) Said named vendor and agent did then and there sell and transfer the real property at issue "with all legal warranties, and with full subrogation and substitution in and to all the rights and actions in warranty which he and his said principal have or might have against all former owners, vendors or warrantors."

(c) The said mentioned property was specifically identified as being the same which had been "Acquired by Edwin P. Brady from Henry Matherne, as per act passed before Francis D. Charbonnet, Notary Public, on May 26, 1910, and Reg. C. O. B. 'P'. folio 53, Parish of St. Charles, La.".

(d) The aforementioned notarial act of sale of May 25, 1932, contains the following specific declaration, viz.: "and here the said Edwin P. Brady declared under oath, that his wife, Maud Rosa Witherow, died on the ———day of November, 1930, and that one child was born of their marriage, to-wit: Mrs. Ione Edwina Brady, wife of Egbert Giles, who is her sole and only legal and forced heir, and is the other appearer herein, who joins with him in this sale; that his wife's succession has never been opened."

(e) This sale and transfer, so made by the said Edwin P. Brady for himself and his principal, the petitioner herein, was consummated for the cash consideration of $580, which the notarial act recites was truly paid in ready and current money to the vendors, who not only acknowledged such payment, but specifically granted full acquittance and discharge therefor. As an additional consideration for the sale, the purchaser, Bernstein, assumed the payment of all taxes due on the property transferred, "but not beyond the past three (3) years if any taxes are due."

2. In the notarial act of May 27, 1932, evidencing the sale and transfer by Jacob Bernstein to Tilman J. Falgout, Harris Falgout, Octave Hogan and Joseph Hogan, as aforesaid,

(a) the property conveyed thereby was specifically identified as that which was acquired by Bernstein by purchase from Edwin P. Brady et al, as per the act of sale passed before the named notary public, on May 25, 1932, and registered in the conveyance records of the Parish of St. Charles, La., in C. O. B. —, folio —. The prior act, so referred to, had actually been recorded in conveyance book HH, folio 302, on the preceding day.

(b) The vendor, Jacob Bernstein, sold the property with all legal warranties for $1,125, $325 of which was paid cash, with the remaining $800 represented by two notes of $400 each, bearing 6% per annum interest from date until paid, and made due and payable on October 1, 1932, and February 1, 1933, respectively.

(c) This Brady-Falgout et als act of transfer was recorded in the conveyance records of the parish of St. Charles, La., in C. O. B. HH, folio 308, on the succeeding day, i. e., May 28, 1932.

From the foregoing recital, it clearly appears that the conveyance records of the Parish of St. Charles, La. (within which parish the property sold and transferred was situated), did, for over five years before petitioner filed her bill in equity, give public notice to all who might be in any wise concerned (which included petitioner) of the fact that Edwin P. Brady, purporting to act as her duly appointed and qualified agent and attorney in fact (by virtue of the notarial power of attorney which she had executed on March 10, 1931, and which he then and there produced and made part of the notarial act whereby for himself and for her, his principal), sold and transferred to Jacob Bernstein the entirety of the interest jointly owned by father and daughter, one-half to each, in and to the real property in said act described.

Edwin P. Brady, who was thus joint owner of the entirety of the fee with, and in like proportion as, his daughter, did unite petitioner's undivided one-half interest to his own in making the sale for himself and for her, as her duly authorized agent, to Jacob Bernstein. Conceding, for the purposes hereof, that when he so did sell and transfer, he, as agent, was unfaithful to his trust in that he did actually include, as a gratuity or "lagniappe", his principal's half interest, free of cost to Bernstein, in order to induce that person to purchase his own remaining one-half interest, this, of itself, certainly did not stamp the sale (as it related to petitioner's said undivided one-half interest) with nullity; if, in any event, nullity at all resulted, it was only a relative nullity.

While true that Article 2452 of the Louisiana Civil Code provides that the

**536**

sale of a thing belonging to another person (by one who sells in the asserted character of owner) is null, such nullity is only relative, not absolute; the unauthorized sale is null, unless the true owner subsequently ratifies it. Long v. Chailan, 1937, 187 La. 507, 175 So. 42, at page 46.

■ The Codal article prescribes the nullity in question solely in the interest of the purchaser in good faith; he has not received the equivalent of the price paid, and, for that reason is accorded an action in warranty to recover damages, even against the vendor in good faith. Jefferson Sawmill Co., Ltd., v. Iowa & Louisiana Land Co., Ltd., 1909, 122 La. 983, 48 So. 428.

■ And where the seller, after his sale of another's property, acquires title thereto, such title immediately vests in the purchaser, who can not then legally sue for rescission of the sale. Wolf v. Carter et al., 1912, 131 La. 667, 60 So. 52; St. Landry Oil & Gas Co., Inc., v. Neal et al., 1928, 166 La. 799, 118 So. 24.

If as a matter of fact petitioner would have the court believe that her own father defrauded her and that her bill in equity is founded upon such loose charge of fraud as may be eked out of the language employed in presenting her case —not against him, and neither against Jacob Bernstein, his alleged confederate and active collaborator in working out her claimed defrauding by her trusted agent,— it may be pertinent to inquire just why neither were made parties to her suit. However, this may be pretermitted, inasmuch as she does not make bold to charge that the actual defendants in her suit did, themselves, purposely cooperate with the unfaithful agent in order to assist him in violating the trust reposed in him by his principal.

■ Petitioner's allegations which ascribe "knowledge" to Tilman J. Falgout, Harris Falgout, Octave Hogan and Joseph Hogan concerning the alleged fraudulent prior conduct of both Brady and Bernstein and the then contemplated purpose and intention of the latter to sell and convey unto them, certainly fall far short of charging fraud to them.

■ Equity pleading requires that every fact and circumstance necessary to entitle the plaintiff to relief should be clearly, definitely, certainly and specifically stated in the bill; all intendments are to be construed against the pleader. If it be admitted that all of petitioner's allegations against said four named purchasers from Jacob Bernstein are true, still no charge of fraud is thereby clearly, definitely, certainly and specifically set out; a case may be supposed, consistent with the averments made, that reflects no fraud whatever on the part of said purchasers,—not to mention the fact that a legal presumption of good faith encompasses their purchase.

No peculiar relation of trust and confidence existed between the defendants herein and petitioner, and her bare allegation that she "is informed and believes and, therefore, avers" that they knew that her undivided one-half interest was to be conveyed and has been conveyed without consideration to effect a divestiture of her said interest in the jointly owned property, cannot be made to serve her purpose to inferentially—and it may be fairly said, inequitably—level a subtle charge of fraudulent conduct against them. Such "equity" pleading can not be countenanced. 19 Am.Jur. § 232, pp. 184, 185.

■ Even if it can be reasonably contended that a "defect" existed in Jacob Bernstein's title from Edwin P. Brady and petitioner because (allegedly), to Bernstein's knowledge, the father and agent intended by means of the conveyance to defraud his daughter and principal, and did prove unfaithful to his trust, such defect was not a matter of public record, and no "knowledge" thereof dehors the record that may have come to Bernstein's four vendees affected their "good faith".

It must not be forgotten that, at best, the claimed "defect" in Bernstein's recorded title was, allegedly, due to no other cause than that, in the exercise of the power to sell her undivided one-half interest in the common property which petitioner had conferred upon her agent, her father fraudulently took care of his own interests to the detriment of her own, i. e., that he conveyed both half shares at a price which gave him, as owner, the $580 value that he attached to his own half and, as agent, nothing for petitioner, his principal; or, that he sold her undivided interest without exacting consideration therefor,—an act beyond the authority over her property which she had, admittedly, vested in him, inasmuch as he was authorized to sell for

a price, which he was to collect and give full acquittance therefor.

█ The bill presents no cause cognizable in equity and lacks equity on its face, but even if there be error in arriving at this conclusion, then a consideration of the alternative plea of five years' prescription under Article 3542 of the Louisiana Civil Code convinces one that the bill must be dismissed.

"Prescription runs against all persons, unless they are included in some exception established by law", reads Article 3521, R. C. C.

█ There can be no question that the prescription of 5 years and not that of 10 years, under Article 2221, is applicable, if the plea of prescription is well founded under the facts of the case. The transfer of petitioner's undivided half interest to Bernstein was not absolutely null, even under the most favorable view of petitioner's contentions.

But then, as against the prescription of 5 years, it is argued on behalf of petitioner that "it is a well established rule of Louisiana law that (prescription) does not begin to run against a party on whom fraud has been committed until the fraud has been discovered", and in support thereof, there are cited two cases, decided by the Circuit Court of Appeals for the Fifth Circuit, viz.: Arkansas Natural Gas Co. v. Sartor et al., 5 Cir., 1935, 78 F.2d 924; Buchanan v. Pitts, 5 Cir., 1940, 111 F.2d 599.

Neither of said cases, however, is applicable to this case, where the defendants are not even inferentially charged with having done a single act which tended to conceal from petitioner the fact that Jacob Bernstein had purchased from her father, then and there representing himself as acting not only for his individual interest but likewise for petitioner's, under her own express authority to so do.

The defendants are charged with no activity of machinations having, in the remotest degree, the purpose of concealment; both acts of sale were immediately placed of record in the conveyance records of the parish, wherein was located the real estate conveyed by the said two acts of transfer, and concerning petitioner's relations with her father, as principal to agent, defendants are not charged with having interested themselves therein. See Hyman v. Hibernia Bank & Trust Company, 1916, 139 La. 411, 71 So. 598, and cases therein cited.

In the above-mentioned Arkansas Natural Gas Co. case, said the Court of Appeals with reference to the plea of 3 years' prescription under R. C. C. Art. 3538 which was there involved, viz. [78 F.2d 928]:

"The plea was good prima facie. Board of Com'rs v. Pure Oil Co., 167 La. 801, 120 So. 373. Under the law of Louisiana prescription does not run against one who is ignorant of his rights, provided the party pleading it has been guilty of fraud that contributes to the want of knowledge on the part of plaintiff. Hyman v. Hibernia Bank & Trust Co., 139 La. 411, 71 So. 598. But in the absence of fraud, prescription runs against all persons, unless exempted by some provision of the statute. Plaintiffs are not protected by any statutory exemption. In Cox v. Von Ahlefeldt, 105 La. 543, 30 So. 175, it was said that those who claim exemption from prescription by reason of ignorance resulting from fraud must allege and show that such ignorance was neither willful nor negligent; and again, in Littlefield v. City of Shreveport, 148 La. 693, 87 So. 714, it was said that mere passivity cannot arrest the course of prescription, good faith not being required on the part of the person pleading prescription. La. Civil Code, art. 3550.

"The above-cited decisions of the Supreme Court of Louisiana are in line with the general jurisprudence of the country. Statutes of limitation are founded on public policy and are favored in the law. Mere ignorance of one's rights will not toll the statute of limitations. Concealment by defendant only by silence is not enough. He must be guilty of some trick or contrivance tending to exclude suspicion and prevent inquiry. There must be reasonable diligence on the part of plaintiff and the means of knowledge are the same in effect as knowledge itself. Anderson v. Gailey (D.C.) 33 F.(2d) 589; Insurance Co. of North America v. Parr [4 Cir.] 44 F.(2d) 573; Wood v. Carpenter, 101 U.S. 135, 25 L.Ed. 807; United States v. Oregon Lumber Co., 260 U.S. 290, 43 S.Ct. 100, 67 L.Ed. 261. We know of no decision, either of controlling authority or persuasive, holding that mere ignorance on the part of the creditor will toll the statute."

538

In the Buchanan v. Pitts Case [111 F.2d 601], with reference to the constitutional prescription relating to tax titles, said the court, viz.: " * * * It is true that time does not begin to run against the party on whom fraud has been committed until that fraud has been discovered, yet to avoid the lapse of time or statute of limitation, 'the fraud must have been one which was concealed from the plaintiff by the defendant, or which was of such a character as necessarily implied concealment.' Norris v. Haggin, 136 U.S. 386, 10 S.Ct. 942, 945, 34 L.Ed. 424. * * * "

If petitioner's bill did present a properly charged case of fraud against defendants, the plea of 5 years' prescription, nevertheless, would lie. Her general allegation of ignorance at one time and of knowledge at another, is of no avail to bring her case within a legally established exception to the principle that prescription runs against all persons. Her bill can not be fairly characterized as one to obtain relief from a concealed and recently discovered fraud; but were it so, her pleadings fall far short of meeting the legal requirements; she alleges, it is true, that it was no earlier than "within thirty days from the date of filing" of her bill that knowledge of the alleged facts in question came to her, but she vouchsafes no information concerning the means of obtaining knowledge, why such knowledge was not obtained earlier, and just what diligence she previously employed in investigating the fraudulent conduct of her agent and his alleged confederate Jacob Bernstein, etc. 19 Am.Jur. (Equity) #239, p. 187; Wood v. Carpenter, 1879, 101 U.S. 135, 25 L.Ed. 807.

By way of recapitulation, it must be said that, not only does the petitioner's bill (1) fail to plead facts and circumstances, specifically, in order that they may carry their own conviction of fraud and clearly reveal the wrongdoing sought to be charged to defendants, but (2) such bill does not, as against the alternative plea of prescription of 5 years, present an exception to the general rule that "prescription runs against all persons, unless they are included in some exception established by law". R. C. C. Art. 3521.

The motion to dismiss is well founded and the action should be dismissed at petitioner's cost.

Let judgment be entered accordingly.