(57 South. 325.)

No. 18,540.

BAILEY v. LOUISIANA & NORTHWEST R. CO. et al.

(Jan. 2, 1912. Rehearing Denied Jan. 29, 1912.)

*(Syllabus by the Court.)*

1. RAILROADS (§ 256*)—OPERATION—COMPANIES LIABLE FOR INJURIES.

Whether a railroad company shall operate its road by itself or by another is a question for it, within certain limits, to determine; but the determination of that question cannot relieve it of the consequences to others of negligence in such operation.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 789–792; Dec. Dig. § 256.*]

2. MASTER AND SERVANT (§§ 96, 101, 102, 150*)—RAILROADS (§§ 261, 278*) — INJURIES TO SERVANT—INSTRUCTIONS TO SERVANT.

A section foreman in the employ of a railroad company has a right to expect adequate instructions and information and a reasonably safe place, the character of the work and the circumstances considered, for the discharge of the duties for which he is employed, and, as to him, the negligence of a licensee, operating trains over the road of such company under contract with the owner, whereby his place of work is rendered unnecessarily dangerous, is imputed to his employer. And the licensee is also liable to him for the consequences of its negligence, unless the sufferer is himself guilty of such negligence as directly to contribute to his own injury, or has assumed the risk of the negligence of the other; in either of which cases, both railroad company and licensee are relieved.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 165, 171–184, 192, 297–307; Dec. Dig. §§ 96, 101, 102, 150;* Railroads, Dec. Dig. §§ 261, 278.*]

3. MASTER AND SERVANT (§ 240*)—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE.

It is not negligence in a section foreman on a railroad to travel over his section on a hand car, furnished him for that purpose, when the only train to be at all expected is a log train, which may or may not come on that day, and of whose irregular and unscheduled movements he receives no notice; nor is it negligence in him to be on the track, at such distance from the approaching log train as would enable him, under ordinary circumstances, and with ordinary care on the part of those by whom the train has been made up and is operated, to take himself and his car out of the way, or as would enable them to stop the train before colliding with the car; nor is it negligence in the foreman, under such circumstances, to endeavor to take his hand car off the track, instead of at once seeking his own safety; for, if his position has become perilous by reason of the unexpected failure of those in charge of the train to stop it or check its speed, he cannot be held to the exercise of the most deliberate judgment.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 240.*]

4. MASTER AND SERVANT (§§ 137, 213*)—INJURIES TO SERVANT—OPERATION OF TRAINS—ASSUMPTION OF RISK.

It is gross negligence to make up a log train with a caboose at one end and a locomotive at the other, when the train is to be pushed by the locomotive, moving backward, and is so long as to render it difficult, and at times impossible, for the engineer, who alone, has the power to stop it, to get a stop signal from the lookout in the caboose. And it is gross negligence in those who are operating such a train to fail to make the best of a bad situation, for the engineer to ride with his back in the direction in which the train is moving, and for the men in the caboose not to arrange a more expeditious method of conveying a stop signal than by running back, through the length of the caboose, and waiving their arms over the side of the train. And no sec-

tion foreman can be held to have assumed the risk of such negligence.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. §§ 137, 213.*]

5. DAMAGES (§ 132*)—EXCESSIVE DAMAGES—PERSONAL INJURIES.

Where a railroad section foreman, 32 years old, who is dependent on his physical labor for the maintenance of himself and family, who, by reason of the negligence of others, has had his thigh broken, and, after severe suffering, is left permanently lame, has recovered $3,500 by way of compensation for such injuries, this court finds no sufficient reason for reducing the award.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385, 396; Dec. Dig. § 132.*]

Appeal from Third Judicial District Court, Parish of Claiborne; J. E. Reynolds, Judge ad hoc.

Action by W. Turner Bailey against the Louisiana & Northwest Railroad Company and others. From a judgment for plaintiff, defendants appeal. Modified and affirmed.

John A. Richardson, for appellant Louisiana & Northwest R. Co. Barnette, Roberts & Goff, for appellant Athens Lumber Co. Wimberly & Reeves and McClendon & McClendon, for appellee.

### Statement of the Case.

MONROE, J. This is an action in damages against the Louisiana & Northwest Railroad Company and the Athens Lumber Company, sued in solido, for personal injuries, alleged to have been sustained by plaintiff by reason of their negligence. After exceptions of no cause of action, the lumber company denies liability, and imputes contributory negligence and "assumption of risks" to plaintiff, and the railroad company makes a similar defense, omitting the "assumption of risks" plea, and adding the averment that, by contract between it and the lumber company, the latter had assumed liability for all injuries that might be received by "this defendant's employés," and the prayer that, in the event of a judgment against it, a like judg-

ment be rendered in its favor against the lumber company.

We find the facts, as disclosed by the evidence, to be as follows:

Plaintiff was a section foreman in the employ of the railroad company, and his section included four miles of track between the town of Bienville, in the parish of Claiborne, and Bear Creek. On the morning of October 26, 1907, he started from Bienville at about 7 o'clock, on a hand car, with 3 section hands, and, going northward for about 3 miles, was passing through a cut, some 3 feet deep, when the brakeman of the car, who was working (or "pumping," as they call it) on the right side of the car, and could therefore see somewhat farther into a sharp curve (to the left), through a cut 14 or 15 feet deep, some 700 feet in front of them, saw, rapidly emerging therefrom, a train (which, as it turned out, was owned and operated by the lumber company), consisting of 7 flat cars and a caboose, and pushed by a locomotive, moving backward. The hand car was immediately stopped, and plaintiff and his men jumped off and attempted to remove it from the track; but, before they could do so, the train came so near that the men took themselves out of the way, and plaintiff was attempting to do likewise, and was in the act of climbing up the embankment, when the train struck the hand car and, knocking it against him, inflicted the injury of which he complains.

The witnesses differ as to how fast train was moving, plaintiff's witnesses saying "unusually fast," and defendant's that the speed was not unusual. Plaintiff's witnesses say that there was no outlook on the southern, or forward, end of the train. Defendant's witnesses say that the conductor of the train and two of his men were in the caboose, looking ahead through a door, which opened in that direction. Defendant's witnesses—the engineer, the conductor, and his brakeman—

say that, before entering the deep cut, the engineer blew his whistle. Plaintiff's witnesses—himself and his men, and two others who were on the outside, but were in a position to have heard—say that no whistle was blown; and their testimony appears to be supplemented by that of the fireman on the locomotive. Taking the testimony of the witnesses on both sides, the facts are established, as we think, that, as the train, or, perhaps, we should say, the locomotive, was passing through the deep cut, the engineer turned his face to the rear, and for several minutes was examining the "equalizer bar," on the side of the locomotive, and the fireman was engaged in supplying the furnace with coal, with the result that, when those in the caboose saw the hand car in front of them, and attempted to signal the locomotive to stop, it was quite a little while before they could attract anybody's attention. The conductor testifies that he could not see any one on the locomotive, and did not see the engineer or the fireman until after the accident had happened, though he knew that they must have seen his signal, because the train did eventually stop. One of the men who was in the caboose with the conductor, being asked:

"Now how far did you run, how far did the train go, before you got * * * Mr. Short's, the engineer's, attention?"

—replied:

"I suppose we went about eight car lengths"

—which was a matter of, say, 320 feet; it being shown that the cars were 40 feet long. The engineer admits that the first intimation that he had of the danger in front was a signal, or warning, from the fireman, and the following questions were propounded to and answered by him, to wit:

"Q. How far was the hand car ahead when you first discovered it? A. I suppose about half a car length, flat car—40-foot car. Q. Who was giving the signals to stop? The fireman gave the signal to you; but who was giv-

ing signals from the front end of the train, if any one, to the engine? * * * A. I noticed a couple or three negroes back on the train, about two cars, possibly, from the caboose."

The fireman testifies that when he first saw the flagging from the front—

"the end of train was pretty close to the hand car, maybe two car lengths; that it scared him, and that he 'hollered to him' [the engineer], to stop him, and 'when I [he] knew anything the engine was stopped.'"

He testified at one time that the stop signal was given too late for them to stop, and that he never saw—

"any effort made to stop or check the train until after the man was struck. The train was going at a fast rate of speed."

At another time, speaking of the engineer, he said:

"He stopped as quick as he could, I guess; I know he stopped."

The engineer says that the train ran about six car lengths (240 feet) after striking the hand car. Other witnesses say that, when the train stopped, the locomotive was about opposite to where plaintiff was lying. The testimony, taken as a whole, is fairly conclusive to the effect that the distance from the southern end of the deep cut, from which the train emerged, to the point at which it struck the hand car was 690 feet; that there was nothing to prevent a "lookout" on the front of the train from seeing the hand car as soon as the train emerged from the cut, if not before; and that the train could readily have been stopped in time to have avoided the collision, if the brakes had been applied promptly when the hand car became visible. or even after the train had run as much as two or three hundred feet; and that, even if the train had not been actually stopped in time to avoid striking the hand car, the injury to plaintiff would, in all probability, have been avoided, if it had been slowed down, so that, when it did strike the hand car, it would not have knocked it, as it did,

off the track and against the plaintiff. Not only was there delay on the locomotive, however, in taking the signals from the front of the train (delay caused by the fact that both the engineer and the fireman had their backs turned in the direction in which the train was moving), but there was delay at the front of the train in giving the signals. The conductor and his men, who were looking out through the narrow front door of the caboose, had, in order to give the signals, to run back through the caboose (or, at least, that is what they appear to have done), and get outside and wave their arms over the side of the train; whereas, if the caboose had been provided with a cupola, the signal might have been given from there at once, and seen at once on the locomotive; but the caboose was not so provided. Plaintiff had begun to work as foreman of the section in August preceding the accident, and, not having been furnished with any schedules or time-tables, he picked up his information as to movements of the trains as best he could. He learned from the schedule posted in the office at Bienville when the regular trains were to be expected; and, also, that he might ordinarily look out for an extra train within certain hours. But the logging trains of the lumber company ran irregularly—when they were loaded, or when, as on the day of the accident, an empty train might be going after a load. The trainmaster of the road was, no doubt, advised when a logging train would make use of the road; but no one communicated such information to the plaintiff, whose business it was to keep the roadbed in a safe condition, and who was furnished with the laborers to do the work required for that purpose, and with the hand car, with which to carry them and himself over the road to the place where the work was to be done. There is no doubt that, as between the hand car and the train, the latter was entitled to the right of way; that the train was, per-

haps, more easily seen from the hand car than the hand car from the train; and that plaintiff could have escaped without injury, if he had not attempted to get the hand car off the track.

The contract between the two defendants was entered into in 1905, and had 10 years from that date to run. The right is thereby given to the lumber company, upon certain terms and conditions, to operate a locomotive and log trains on the railroad, and, among the conditions, is one to the effect that all engineers and conductors employed to operate such locomotive and trains are to be approved by the railroad company; and another to the effect that the lumber company shall be liable for all personal injuries to the employés of the railroad company, or to other persons, from the operation of said locomotive and trains. There was a verdict and judgment in the district court in favor of plaintiff and against the defendants in solido for $3,500. Defendants have appealed.

### Opinion.

Counsel for the lumber company predicate their argument upon the assumptions that plaintiff knew, or ought to have known, the rules of the company; and that he ran his hand car into the deep cut, from which the train emerged, without taking any precaution to ascertain whether a train was coming through. Thus (quoting one of the several passages on that subject, which we find in the brief) they say:

"In order for the plaintiff to recover in this suit, this court must hold that it was not negligence for a section foreman, who knew the rules of the company, or ought to have known them, who knew the trains were liable to come along at any time, to run his car into a deep cut, on a sharp curve on the road, where he could not see more than two or three hundred yards ahead of him, without first stopping to look and listen for the approach of the train, or to send a flagman ahead to warn of the approaching danger, because every fact and every circumstance connected with this case shows that, if the plaintiff had done this, there would have been no accident."

The assumptions thus indulged in are not, however, sustained by the facts. Plaintiff was not furnished with any copy of the rules of the railroad company, or particularly advised concerning them; and he knew nothing, so far as we are informed, of the rules of the lumber company. And the witnesses agree that the accident did not occur in the deep cut, but at a point which defendant's witnesses, by guesswork, fix as from 400 to 480 feet, and plaintiff's witnesses, by actual measurement, at 690 feet, to the southward of that cut. The defendant was employed to keep the roadbed in such a condition that the trains of both defendants might safely be operated over it. Both defendants expected, and had the right to expect, that he would discharge the duty for which he was employed. Both defendants knew that, in the discharge of that duty, it was necessary for him to carry himself and his men backwards and forward over the road upon the hand car that was furnished him for that purpose; and both of them knew that trains, which were operated over the road at odd times, without regard to schedules, and with no notice to him, were likely to encounter him at any time; and hence that such trains, in order to give him a reasonable chance to escape death or injury, should be operated with at least the care required in the operation of regular trains.

It is said that there is no evidence in the record that it was negligence for the defendant to run its train backward. But the thing speaks for itself. The train was about 480 feet long, or, perhaps, more—so long that, in coming around a sharp curve, in a deep cut, the "lookout" in front could not be seen by the engineer, which, probably, accounts for the fact that, in passing through the cut here in question, the engineer and fireman, both turned their backs in the direction in which the train was moving, and, not knowing when the head of the train emerged from the cut, were not ready to take the signals to stop, and did not know, until it was too late to stop the train, that the hand car was on the track. There is not the shadow of a doubt that, had the engineer seen the hand car when the conductor saw it, from the head of the train, the train could easily have been stopped before it reached the hand car; for, according to the engineer, it was stopped within 6 car lengths, or 240 feet, from the time that he applied the brakes, after the fireman had "hollered" to him, and he would have had 690 feet within which to stop it, if he had been where the conductor was, and where, in our opinion, he ought to have been. To the suggestion that the train was more easily seen from the hand car than the hand car from the train, there are, as it appears to us, two answers: First, that the train *was* seen from the hand car, and the hand car was stopped in time to have enabled those in charge of the train to have avoided the collision by stopping it; second, that though there is some little talk about a slight drizzle, there was no trouble about seeing either the hand car or the train. The plaintiff, seeing the train, did all that he could to give it the right of way, to which it was entitled, and to avert the accident, and was trying to do more when he was injured. The engineer of the train who alone had control of the brakes, being in a position where he could neither see the hand car nor see the stop signals given by those who had been placed at the head of the train for the purpose of giving such signals, did nothing to avert the accident, because he did not know that it was impending until it was too late for him to act. Finally, it is said that plaintiff might have escaped injury if he had not attempted to get the hand car off the track, and attention is called to the fact that he first testified that his idea was to save the hand car, and

that it was only when he was re-examined that he said that he wanted to avert a wreck and loss of life. It is quite certain, from any point of view, that he was risking his life in the discharge of what he conceived to be his duty, and what, we think, plainly was his duty; and it is also quite certain that he was acting under circumstances which left no time for mature reflection. What his predominant idea or motive was it would, perhaps, be difficult for him to say; but the defendants, by whom he was placed in a position where he was required to act at once, cannot be heard to complain that he did not adopt the course which would have been safer, and leave the question of the safety of the property and lives of others to take care of itself.

[1-4] We find nothing in the contract between the two defendants which relieves either from liability to plaintiff for the injury received by him. The road belongs to the railroad company, and, whilst the question whether it shall be operated by itself or by another is one for it, within certain limits, to determine, the determination of that question cannot relieve it of liability for the consequences to others of negligence in such operation. Plaintiff, being an employé of the railroad company, had the right to expect adequate instructions and information and a reasonably safe place, the character of the work and the circumstances considered, for the discharge of the duties for which he was employed, and, as to him, the negligence of the lumber company (through which the railroad company chose, in part, to operate its road), whereby his place of work was rendered unsafe, is imputable to his employer. And the lumber company is also liable to plaintiff for the consequences of its negligence, unless, indeed, plaintiff himself was guilty of such negligence as directly to have contributed to his own injury, or unless he

assumed the risk of the negligence referred to, in either of which cases, both defendants would be relieved. There was, however, no contributory negligence in plaintiff's traveling upon the railroad upon his hand car, since that was the work for which he was employed; or in his being on the track at such a distance from the approaching log train as would have enabled him, under ordinary circumstances, and with ordinary care on the part of those by whom the train had been made up and was being operated, to have taken himself and his car out of the way, or as would have enabled them to have stopped the train before colliding with the car. Nor was plaintiff guilty of contributory negligence in endeavoring to get the hand car off the track, and in not at once seeking his own safety, since the position was one of apparent danger, resulting from the unexpected failure of those in charge of the train either to check its speed, or to stop it, and he could not be held to the exercise of the most deliberate judgment. On the other hand, those who were responsible for the making up of the train were guilty of gross negligence in so making it up as to render it difficult, and at times impossible, for the engineer upon the locomotive at the rear end, who alone had the power to stop it, to get a stop signal from the "lookout" at the head of the train. And those who operated the train were grossly negligent in failing to make the best of a bad situation, since the engineer might have been on the alert, instead of riding with his back in the direction in which the train was moving; and those at the head of the train might have arranged a more expeditious method of transmitting a signal, immediate action on which was likely to be required. It is hardly necessary to say that plaintiff did not, in his contract of employment with the railroad company, assume the risk of any such

negligence as is thus described. Whether, if he had done so, the assumption would inure to the benefit of the lumber company, it is unnecessary to inquire. Though the railroad company in its answer prays that, in the event of a judgment against it, it have a like judgment against the lumber company, its counsel, in their brief, ask that, in such event, the right of the railroad company be reserved. We have therefore, pretermitted the consideration of the question thus referred to.

[5] The physicians who attended plaintiff say that his thigh bone was fractured a few inches above the knee; that he was confined to his bed for a number of weeks; that he suffered intense pains; that his leg is shortened (plaintiff himself says 2½ inches); and that he is permanently lame. One of the physicians says:

"The limb is shorter and the knee joint is stiffened, causing great lameness and inconvenience."

The other physician says:

"The result of the fracture is the shortening of the limb about 1½ or 2 inches. * * * He is handicapped, to some extent, by lameness due to the fracture."

It is shown that plaintiff is about 32 years old, and has a wife and two children; and it is evident that he is dependent upon his physical labor for his and their maintenance. We do not, under the circumstances, feel called upon to reduce the amount awarded him.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended by reserving the rights of the defendant railroad company as against the defendant lumber company, and, as thus amended, that said judgment be affirmed; the defendants and appellants to pay the costs of the appeal.