(100 South. 35)

No. 23195.

## HUNTER et al. v. CHICAGO LUMBER & COAL CO. et al.

(June 5, 1922. On Rehearing by Whole Court, April 28, 1924.)

*(Syllabus by Editorial Staff.)*

1. **Corporations ⬖377(2)—Identity of corporation not destroyed because another corporation holds controlling stock.**

That one corporation owns controlling stock in another does not destroy identity of latter.

2. **Corporations ⬖178—Stockholder becoming creditor of corporation or paying its debts has same rights as other creditors.**

Stockholder who becomes creditor of corporation has same rights as other creditors, and if he pays corporation's debt in excess of liability as stockholder, he has same rights and remedies for recovering amount that other creditors have.

3. **Judgment ⬖878(2)—One paying judgment against another may take assignment thereof in name of third party.**

Where judgment has been rendered against two corporations in solido, it is not improper for corporation interested in one of debtor corporations to take assignment of judgment on paying it in name of third party instead of in its own name.

4. **Judgment ⬖878(2)—Judgment debtor held not entitled to have judgment in solido against another declared paid because of simulation.**

Where personal injury judgment was rendered in solido against railroad company and lumber company using railroad company's track under indemnity agreement, and creditor of lumber company paid judgment taking assignment in name of another, suit would not lie by railroad company to have judgment declared paid, it not having been injured by purchase of judgment or its assignment, in view of Rev. Civ. Code, art. 1978.

Rogers, Land, and Leche, JJ., dissenting.

Appeal from Third Judicial District Court, Parish of Claiborne; J. E. Reynolds, Judge.

Suit by G. W. Hunter, receiver of the Louisiana & Northwest Railroad, and others, against the Chicago Lumber & Coal Company and another. Judgment for plaintiffs, and defendant named appeals. Judgment annulled and suit dismissed on rehearing.

Roberts & Roberts, of Minden, and Hall, Monroe & Lemann, of New Orleans, for appellant.

Stubbs, Theus, Grisham & Thompson, of Monroe, for appellees.

By the WHOLE COURT.

LAND, J. During the year 1907 W. Turner Bailey, who was an employee of the Louisiana & Northwest Railroad Company, was injured by the train of the Athens Lumber Company, which it was operating over the line of said railroad company, under a contract by the terms of which the said Athens Lumber Company obligated and

bound itself to be responsible for all damages that may occur in consequence of its operating its locomotives or trains over the tracks of said railroad company.

Bailey instituted suit against the railroad company and the Athens Lumber Company for said injuries received by him, and prayed for judgment in solido against both defendants for the sum of $10,000. A judgment was rendered in Bailey's favor in the lower court against both defendants in solido for the sum of $3,500 with costs, and was affirmed by this court on appeal. See Bailey v. La. & Northwest R. R. Co. et al., 129 La. 1029, 57 South. 325.

The receiver of said railroad company, alleging in his petition that said judgment has been paid by the Athens Lumber Company, the same being a debt of the Athens Lumber Company, for which under its contract it alone is responsible as between the railroad company and itself, has instituted the present suit to have said judgment canceled, and removed from the records, as it operates as a judicial mortgage against the property of the railroad company.

Petitioner alleges that the Athens Lumber Company is a subsidiary of the Chicago Lumber & Coal Company; that the officers and stockholders of the latter company own and control a majority of the stock of the said Athens Lumber Company; that said companies entered into a fraudulent agreement to procure the National Bank of Commerce, of Kansas City, Mo., to advance the money and pay off the Bailey judgment against the railroad company and the Athens Lumber Company, and to take an assignment of said judgment in their name, and to hold the same until such time as the Chicago Lumber & Coal Company instructed them to transfer the same to whomever they stated. Petitioner alleges that in order to carry out said fraudulent scheme the National Bank of Commerce caused one Fred D. Whiting

to take an assignment in his name, which was done for the benefit of said bank, in accordance with the fraudulent agreement between said Chicago Lumber & Coal Company and the Athens Lumber Company. Petitioner alleges that the Chicago Lumber & Coal Company paid the said bank, and the said amount paid was the proceeds of the Athens Lumber Company's output of its mill plant, which the Chicago Lumber & Coal Company, its officers and stockholders owned and operated, and that for this judgment of Bailey they were both liable by virtue of said Chicago Lumber & Coal Company owning and controlling the Athens Lumber Company.

Petitioner alleges that the acts of the said Chicago Lumber & Coal Company, the Athens Lumber Company, the National Bank of Commerce, and Fred D. Whiting was a fraudulent simulation entered into by all of said parties to shield and protect the said Athens Lumber Company and its property from paying the judgment for which it was responsible, and thereby force the Louisiana & Northwest Railroad Company to pay same.

Petitioner alleges that the Chicago Lumber & Coal Company allowed said assignment to Whiting to remain in his name until the said Chicago Lumber & Coal Company and the Athens Lumber Company could dispose of all the Athens Lumber Company's property of every kind and nature, and dissolve its corporate capacity, the Chicago Lumber & Coal Company receiving the benefits of the proceeds of said Athens Lumber Company's property and assets well knowing that the Louisiana & Northwest Railroad Company was making every effort to locate and prove the payment of this Bailey judgment, and that they knew that it instituted a suit against the Athens Lumber Company to declare this judgment the debt of the Athens Lumber Company and to decree it

paid. Petitioner alleges that they also knew that the National Bank of Commerce and Whiting refused as witnesses in said cause to state anything connected with said assignment of said judgment, or to give any statement of the entries on their bank books wherein the payment or assignment appeared, and declined to give a statement of the account of the Chicago Lumber & Coal Company with said bank. Petitioner alleges that they also knew that the lower court in said suit of Louisiana & N. W. R. R. Co. v. Athens Lumber Co., 134 La. 788, 64 South. 714, L. R. A. 1915B, 856, decreed that the Athens Lumber Company was responsible for the Bailey judgment, and ordered them to pay the court expenses, which the railroad had incurred and paid in defending said Bailey.

Petitioner alleges that the Chicago Lumber & Coal Company now claims that it is the owner by purchase and assignment of the Bailey judgment, and that said claim of ownership is a fraudulent simulation as stated above.

Defendant company denies, of course, any fraudulent simulation, scheme, or agreement of any sort; alleges its good faith in purchasing said judgment, and its subrogation by the said Bailey to his rights to enforce the said judgment against either or both of the parties thereto, precisely as the said Bailey might have done. Defendant denies that the amount which it paid to Bailey for the purchase of the said judgment was the proceeds of the Athens Lumber Company's output of its mill plant, and defendant denies that it owned or operated the Athens Lumber Company or controlled the same. Defendant company prays that plaintiff's suit against it be rejected at its costs, and that there be judgment recognizing the defendant as the holder and owner of the original judgment in favor of W. Turner Bailey against the Athens Lumber Company and the Louisiana & Northwest Railroad Company in solido, subrogated to all of the rights of the said Bailey and entitled to enforce the said judgment precisely as he might have done.

The defendant the Chicago Lumber & Coal Company would have it appear to the court that said company is and always has been a distinct and separate corporate entity from the Athens Lumber Company, and that the latter corporation was organized in good faith, and operated by its officers and stockholders as a distinct and separate corporation, and that the only relation that has existed between defendant company and the Athens Lumber Company has arisen in the usual course of dealings between such companies, defendant company alleging that it is in the business of jobbing lumber, i. e., of purchasing the output of mills, advancing money thereon, and selling such output to other dealers in lumber, and that in this way defendant company established business connections with the Athens Lumber Company, which became a debtor to the defendant company to a large amount.

While defendant company denies in its answer that it has owned any stock at any time in the Athens Lumber Company, yet it admits in said answer that it is true that individuals who hold stock in the Chicago Lumber & Coal Company also hold a majority of the stock in the Athens Lumber Company. But Robt. W. Fullerton, a stockholder, a member of the board of directors, and the secretary of the Chicago Lumber & Coal Company, places a very different aspect upon the relations existing between said company and the Athens Lumber Company in the testimony given by him and found in his depositions filed in this suit. This witness states that he has served as the secretary of the Chicago Lumber & Coal Company for the last 7 or 8 years; that the Athens Lumber Company was organized about 15 years ago; that at the time of his depositions the Athens Lum-

ber Company had been in liquidation for several years; that he was one of the liquidators, and was appointed in October, 1913; that the officers of the Athens Lumber Company, at the time it went into liquidation, consisted of R. W. Fullerton, president, J. T. Burlingame, vice president, E. J. Robbe, secretary, and Frank Goebel, treasurer; that E. J. Robbe, at the time he was appointed liquidator of the Athens Lumber Company, was a stockholder, a director, and secretary of said company, and auditor of the Chicago Lumber & Coal Company; that the officers of the Chicago Lumber & Coal Company at the time the witness Robt. W. Fullerton was appointed liquidator for the Athens Lumber Company consisted of S. H. Fullerton, president, Robert Fullerton, vice president, Frank Goebel, treasurer, and himself, Robt. W. Fullerton, secretary; that Robert Fullerton, Jr., had joined the army, and that witness Robt. W. Fullerton, secretary of the Chicago Lumber & Coal Company, was a son of S. H. Fullerton, its president. The testimony of this witness shows that at the time he and Robbe took charge of the assets of the Athens Lumber Company no inventory was made; that the liquidators took possession of all the assets of the Athens Lumber Company and converted same into cash, amounting to $15,000; that the amount of the claim of the Chicago Lumber & Coal Company against the Athens Lumber Company was $75,000; that the moneys that came into the hands of the liquidators were paid out, and that neither cash or assets of any kind remained on hand, and that the liquidation was entirely closed. It shows that the liquidation was conducted out of court, and that the stockholders of the Athens Lumber Company, composed of the witness Robt. W. Fullerton, E. J. Robbe, J. E. Kennedy, and J. A. Cleaton, appointed Robt. W. Fullerton and E. J. Robbe as liquidators, and the witness Robt. W. Fullerton did not pay for the stock in the Athens Lumber Company that stood in his name. The testimony of this witness further shows that out of the assets of the Athens Lumber Company, he first paid the pay roll in full, and then paid the current bills, "and," to quote the language of the witness, "that left the Chicago Lumber & Coal Company as the only remaining creditor, and whatever then remained on hand I turned over to it (the Chicago Lumber & Coal Company)."

This witness is rather vague in some of his answers. He states that the pay roll amounted to $2,000 or $3,000, and that the current bills were about the same. As he admits that the assets of the Athens Lumber Company when converted into cash, realized about $15,000; then, deducting from this sum the amount of the pay roll and the current bills, i. e., from $4,000 to $6,000, the Chicago Lumber & Coal Company, defendant in this case, received out of said assets a sum amounting to $9,000 at the least and to $11,000 at the highest calculation.

The witness R. W. Fullerton, when recalled for direct examination, stated that the Chicago Lumber & Coal Company purchased the Bailey judgment because Bailey had threatened to attach the property of the Athens Lumber Company and the Athens Lumber Company owed the Chicago Lumber & Coal Company money, and that it was natural that "we did not want any attachment served on the property, because we knew that there was not sufficient property to pay our debt as it stood." J. W. Perry, president of the National Bank of Commerce, Kansas City, states in his deposition that about the middle of March, 1912, the Chicago Lumber & Coal Company requested him to purchase the Bailey judgment; that he did so, and the sum paid by the bank was reimbursed a short time thereafter by the Chicago Lumber & Coal Company, and that the assignment was taken in the name of Fred D. Whiting, as was usually done in such transactions.

The above testimony of Fullerton and Perry sounds very plausible, but its weight is seriously impaired by the letter of Frank Goebel, treasurer of the Chicago Lumber & Coal Company, of date March 15, 1912, addressed to J. W. Perry, president of the National Bank of Commerce of Kansas City:

"There has been a judgment rendered against the Athens Lumber Co., *a subsidiary of this company*, by the Supreme Court of Louisiana, to the amount of $3,500.00. This judgment was rendered *in solido with the Louisiana & Northwest R. R. Co.* We want an *outside person* to purchase this judgment and would like very much to have you help us to this end. Our Mr. H. R. Swartz will' call upon you and explain *just how our attorneys recommend this matter be handled.* The amount of money necessary for the purpose of the judgment—that is $3,-500.00 and perhaps interest, we will ask you to advance and charge to our account for the time being. *You will appreciate the necessity of this method of handling this.* We, of course, expect to stand between you and any loss through this transaction." (Italics ours.)

On March 16, the day after the letter was written, Mr. Perry, the president of the National Bank of Commerce, wrote Mr. Goebel, treasurer of the Chicago Lumber & Coal Company, from Kansas City:

"Your favor of the 15th received this morning and I also had a call from Mr. Swartz. We have complied with Mr. Swartz's request and will be glad to follow the matter up."

Frank Goebel, treasurer of the Chicago Lumber & Coal Company, who engineered this deal, says that this transfer was put in the name of Whiting, "because we did not care to be known at the time, and I know of no other object."

The reasons why the assignment of the judgment was taken in the name of Whiting given by Frank Goebel, treasurer of the defendant concern, "because we did not care to be known at this time, and I know of no other object," flatly contradicts the reason given by R. W. Fullerton, the secretary of the defendant company, for taking the assignment of the judgment in the name of Whiting, "we did not want any attachment served on the property, because we knew that there was not sufficient property to pay our debt as it stood."

The reason for the simulated assignment to Whiting is apparent. The testimony shows conclusively that the Athens Lumber Company had about exhausted its supply of timber, and Bailey was demanding payment of his judgment. This transfer was made on March 20, 1912, and, according to the testimony of Mr. Fullerton, it not only had exhausted its supply of timber, but had sold its lumber and principal assets and its mill had burned, and liquidators were appointed during the following year.

The assets were all handled by the Chicago Lumber & Coal Company, and the purpose of the transfer of this judgment was to hold it until the entire assets of the subsidiary had been pocketed by the principal corporation, and then to go after the railroad company.

Even if the Chicago Lumber & Coal Company was a purchaser of this judgment, and if the Athens Lumber Company was not a subsidiary of the Chicago Lumber & Coal Company, still, having taken charge of and appropriated the assets of the Athens Lumber Company, it could not be in a better position than the latter company itself, had it paid the judgment.

It is not denied by plaintiff in his brief that the Athens Lumber Company is entitled to bring this suit against the railroad company as cosolidary debtor to fix the status of the indebtedness as between themselves, and of course the Chicago Lumber & Coal Company has the same rights and remedies, but none other.

The judgment of the lower court decreeing that the Bailey judgment has been paid by the Athens Lumber Company and ordering the cancellation of said judgment on the

judicial and mortgage records is correct, and is affirmed.

PROVOSTY, C. J., and O'NIELL, J., dissent.

ST. PAUL, LECHE, and THOMPSON, JJ., take no part, as they were not members of the court when the case was argued and submitted.

### On Rehearing.

### By the WHOLE COURT.

O'NIELL, C. J. This is a suit to cancel a judgment as having been paid. The judgment was rendered in favor of one W. Turner Bailey against the Louisiana & Northwest Railroad Company and the Athens Lumber Company, in solido, for $3,500, and was affirmed by this court in January, 1912. Two months later the Chicago Lumber & Coal Company, defendant in this suit, being a stockholder and creditor of the Athens Lumber Company, bought the judgment from Bailey, to prevent execution against the Athens Lumber Company, and took an assignment in the name of Fred D. Whiting. Several months later the sawmill of the Athens Lumber Company was destroyed by fire. Nearly a year after the Chicago Lumber & Coal Company had bought the Bailey judgment, and nearly two years after the judgment had been affirmed, the stockholders of the Athens Lumber Company voted to liquidate the corporation. The stockholders' meeting was preceded by a publication of the call for the meeting for the purpose of liquidating, published in a newspaper in the parish where the Athens Lumber Company had its domicile and principal business, where the Bailey judgment had been rendered, and where the chief counsel for the railroad company then resided.

The liquidators converted the assets of the Athens Lumber Company into cash, amounting to approximately $15,000, and disbursed the proceeds. They paid the labor pay rolls, approximately $2,500, and the current bills, approximately $5,000, and turned over the balance, approximately $7,500, to the Chicago Lumber & Coal Company. That left the Chicago Lumber & Coal Company a creditor of the Athens Lumber Company for approximately $70,000, besides the amount of the Bailey judgment.

Plaintiff contends that the Athens Lumber Company was a "subsidiary" of the Chicago Lumber & Coal Company, and that the buying of the judgment by the latter was a "fraudulent simulation," and had the effect of paying and extinguishing the debt. The district court so held, and the defendant Chicago Lumber & Coal Company has appealed.

The judgment which the Chicago Lumber & Coal Company bought from Bailey was given for personal injuries suffered by him by being run down by a train operated by the Athens Lumber Company on the tracks of the railroad company while Bailey was operating a hand car as section foreman in the employ of the railroad company. In defending the suit, the railroad company claimed that under the contract between it and the lumber company for the operation of the lumber company's trains on the railroad company's tracks the lumber company was liable as an indemnitor to the railroad company for any damages that the latter might have to pay. But in affirming the judgment in favor of Bailey this court merely reserved to the railroad company whatever rights the latter had against the Athens Lumber Company. See Bailey v. Louisiana & Northwest Railroad Co. et al., 129 La. 1029, 57 South. 325. Thereafter the railroad company sued the Athens Lumber Company to have it decreed that the judgment in favor of Bailey had been paid by the Athens Lumber Company, and that the payment had extinguished the debt entirely, because of the alleged

contract of indemnity. The allegation that the judgment had been paid by the Athens Lumber Company had reference to the transaction now in contest, by which the Chicago Lumber & Coal Company bought the judgment in the name of Fred D. Whiting. In the suit referred to, the district court gave judgment for the railroad company against the Athens Lumber Company for $57 court costs, but rejected the demand for cancellation of the judgment. On appeal, this court affirmed the judgment. In the course of the opinion it was said that by the terms of the contract between the railroad company and the Athens Lumber Company, inasmuch as the train that caused the accident had authority from the railroad company's trainmaster to be out on the track, the question whether it was the lumber company or the railroad company that was liable primarily, or as principal obligor, depended upon which one of them was more at fault than the other; and it was held that the railroad company had no right to have that question decided until the railroad company had actually paid the judgment. See Louisiana & N. W. Railroad Co. v. Athens Lumber Co., 134 La. 788, 64 South. 714, L. R. A. 1915B, 856. With regard to the railroad company's allegation that the judgment had been paid by the Athens Lumber Company, the court said:

"It is contended by plaintiff that this judgment has been paid. The contention is not sufficiently sustained. Plaintiff has not been subrogated to any of the rights of parties. If the judgment has been paid by the Athens Lumber Company, it will simplify the issues very much. If it has been assigned and is now held by a third person, as contended by the lumber company, it is not possible legally to order that the judgment is satisfied and that the judicial mortgage must be canceled. That can only be done contradictorily with all parties concerned."

This case is therefore a repetition of the suit of the railroad company against the Athens Lumber Company, with the proper parties before the court.

## Opinion.

The Athens Lumber Company was a "subsidiary" corporation, only in the sense that a majority of its capital stock—about 77 per cent.—was held by the Chicago Lumber & Coal Company. The latter owned 650 of the 840 shares of the Athens Company's stock. Of the remaining 190 shares 50 shares were owned by a man who had no connection with or interest in the Chicago Lumber & Coal Company, and 140 shares were owned by one who owned about $600 out of the total of approximately $4,000,000 of the common stock of the Chicago Lumber & Coal Company.

[1] The fact that the Chicago Company owned the controlling stock in the Athens Company did not destroy the identity of the latter as a distinct legal entity. Some of the best authors on the subject go so far as to maintain that it makes no difference in principle if the one corporation owns all of the capital stock of the other. See 1 Fletcher on Corporations, § 22, and the decisions cited. The doctrine was recognized by this court in Mercer v. Natchez Ball & Shreveport Railway Co., 141 La. 539, 75 South. 234, viz:

"The fact that the lumber company and the railway company are interlocking corporations, engaged in a common enterprise, owned and controlled by the same stockholders, and managed by the same individuals, does not make them one corporation with two names."

The principle had been recognized in the Matter of John D. Belton, 47 La. Ann. 1614, 18 South. 642, in the ruling that the fact that all of the shares of stock in a corporation, after it was created, were owned by a less number of stockholders than the law required as a condition for the organization of such a corporation, did not destroy the corporation as a legal entity.

[2] A stockholder who becomes also a creditor of the corporation has the same

rights that its other creditors have; and, if he pays a debt of the corporation, in excess of his liability as a stockholder, he has the same rights and remedies for recovering the amount that any other creditor would have. Fletcher on Corporations, p. 6852; Guerney v. Moore, 131 Mo. 650, 32 S. W. 1132; La Salle Street Trust & Savings Bank v. Topeka Milling Co., 101 Kan. 446, 167 Pac. 1036, L. R. A. 1918A, 574; Blalock v. Kernersville Mfg. Co., 110 N. C. 99, 14 S. E. 501; 7 R. C. L. 306.

[3] The fact that the assignment of the judgment was taken in the name of Fred D. Whiting, instead of being taken in the name of the Chicago Lumber & Coal Company, is a matter of no consequence. Such transactions are often made in the name of an agent acting for an undisclosed principal; and there is nothing intrinsically wrong in the agent's acting as if for himself. Frank Goebel, treasurer of the defendant company, testified that the only reason for taking the assignment in Whiting's name was that the company desired to be not known in the transaction. That was not at all contradictory of the statement of R. W. Fullerton, secretary of the company, that the purpose in buying the judgment was to prevent an attachment—meaning a seizure—of the Athens Lumber Company's property, which was not sufficient to pay the debt then due to the Chicago Lumber & Coal Company. The witness Fullerton was not asked why the judgment was bought in Whiting's name. The witness was merely explaining why the Bailey judgment was bought by the Chicago Lumber & Coal Company.

In Viguerie v. Hall, 107 La. 767, 31 South. 1019, this court considered and discussed at great length the question whether it was essentially wrong for the purchaser of a chose in action—even of a litigious right—to disguise the transaction as a purchase in the name of a third person, interposed for the purpose; and the ruling was that the disguising of such a transaction was neither wrong nor invalid per se. Chief Justice Nicholls, for the court, said:

"It is no unusual occurrence for parties to place their property and rights in the name and under the control of others, without any consideration whatever, and without the intention of ownership being actually transferred. Such acts are permissible, and cannot be gainsaid, unless they carry injury to some one. A simulation is not necessarily a fraud. It is only so when injury to third persons is intended. Gravier's Curator v. Carraby's Ex'r, 17 La. 118, 36 Am. Dec. 608. Our court has held that simulated transfers may be for a lawful purpose—as, for instance, to enable the transferee to bring suit; to raise money, etc. See Emswiler v. Burham, 6 La. Ann. 710; Dosson v. Bieller, 10 La. Ann. 570; Stewart v. Newton, 12 La. Ann. 622. Parties opposing such acts must allege and show wherein they are aggrieved thereby. Hen. La. Dig. 180. This doctrine finds expression in repeated adjudications of this court in matters of bills and notes, under a syllabus to the effect that the 'holder of negotiable paper, indorsed in blank, may sue, though only agent, in his own name, or he may sue as holding the legal title for the use of the real owner. Defendant has no right to inquire whether plaintiff, in whom the legal title appears to be vested, be an agent of the real owner, unless by a fictitious assignment it be attempted to deprive him of substantial grounds of defense which he may have against the true owner.'"

The liquidation of the affairs of the Athens Lumber Company was conducted openly and above board. The attorney for the railroad company knew that the liquidation was going on. The railroad company could have asked for a judicial liquidation, or a receivership, if the railroad company had desired that the holder of the Bailey judgment should receive his pro rata of the funds to be distributed by the liquidators of the Athens Lumber Company. Even if the railroad company or its attorney did not know that the Bailey judgment had been assigned to Whiting, or bought by the Chicago Lumber & Coal Company, the railroad company and

its attorneys did know that the judgment remained outstanding and uncanceled. And the railroad company was not put to any disadvantage whatever by the Chicago Lumber & Coal Company's buying the judgment— or by the assignment in the name of Whiting. There is no reason to believe that Bailey would not have issued execution against the railroad company if somebody had not promptly bought the judgment.

[4] The point on which this case turns in favor of the defendant is that the railroad company was not injured by the Chicago Lumber & Coal Company's buying the Bailey judgment, or by the assignment of the judgment to Whiting. The Athens Lumber Company was insolvent. But the situation in that respect was not made worse for the railroad company by the Chicago Lumber & Coal Company's buying the judgment—or by its being assigned to Whiting. This case is governed by the rules which govern the action by a creditor to annul a transaction made between his debtor and a third person in fraud of the creditor's rights. Rev. Civ. Code, arts. 1968–1994. The creditor, in such case, has no right or cause of action unless the transaction complained of is both fraudulent and injurious to him. Article 1978 declares:

"No contract shall be avoided by this action but such as are made in fraud of creditors, and such as, if carried into execution, would have the effect of defrauding them. If made in good faith, it cannot be annulled, although it prove injurious to the creditors; and although made in bad faith, it cannot be rescinded, unless it operate to their injury."

Even if the Athens Lumber Company had been adjudged to be under obligation to indemnify the railroad company for the railroad company's liability under the Bailey judgment, the railroad company would be in no better position than that of a creditor of the Athens Lumber Company. In that position the railroad company would have no right to complain of the transfer or assignment of the Bailey judgment, without a showing that the transfer or assignment deprived the railroad company of some right or advantage.

The judgment appealed from is annulled, and the plaintiff's demand is rejected, and its suit is dismissed at its cost.

ROGERS, LAND, and LÉCHE, JJ., dissent.

THOMPSON, J., recused.