O’NIELL, C. J.
 

 In October, 1910, W. Turner Railey obtained a judgment in the district court in Claiborne parish against the Louisiana & Northwest Railroad Company and the Athens Lumber Company, in solido, for $3,500 for damages for personal injuries. A train, operated by the lumber company on the tracks of the railroad company, had run down and injured Bailey while he was operating a hand ear in the employ of the rail
 
 *579
 
 road company. In defending the suit, the railroad company pleaded that, 'under its contract with the lumber company for operating the lumber company’s cars on the railroad company’s tracks, the lumber company was responsible as indemnitor to the railroad company for any damages that the railroad company might have to pay. On appeal by both defendants the judgment was amended so as to reserve whatever right the railroad company might have against the lumber company in that respect. As amended, the judgment was affirmed in January, 1912. See Bailey v. Louisiana & Northwest Railroad Co. et al., 129 La. 1029, 57 So. 325.
 

 Two months later one Ei\ed Whiting bought the judgment from Bailey for the Chicago Lumber & Coal Company and assigned it to the company. In the meantime the judgment had been properly recorded in the parish of Claiborne; and the railroad company was promptly notified that it was assigned to the Chicago Lumber
 
 &
 
 Coal Company. Thereupon the railroad company sued the Athens Lumber Company to have the judgment canceled, averring that it had been paid and extinguished instead of being transferred to Whiting and to the Chicago Lumber & Coal Company. The suit was dismissed, and, on appeal, the judgment was affirmed because Whiting and the Chicago Lumber Company were not made parties to the suit. The decree affirming the judgment of the district court was rendered in March, 1914. See Louisiana & Northwest Railroad Co. v. Athens Lumber Co., 134 La. 788, 64 So. 714, L. R. A. 1915B, 856.
 

 In the meantime, that is, in 1913, the railroad company went into receivership, ' George C. Hunter being appointed receiver. The receivership continued until May, 1923.
 

 In December, 1914, Hunter, as receiver, renewed the suit to have the judgment canceled, averring that it had been paid and extinguished instead of being transferred to Whiting or to the Chicago Lumber & Coal Company. Fdr some reason, which the record does not explain, the suit remained in court an unusually long time. The district court gave judgment in favor of the receiver of the railroad company, declaring the Bailey judgment paid and extinguished, and ordering it canceled from the records. On appeal, the judgment was affirmed in June, 1922, but, on ‘rehearing, the judgment was reversed, and the receiver’s suit was dismissed in April, 1924. See Hunter, Receiver, v. Chicago Lumber & Coal Co. et. al., 156 La. 19, 100 So. 35.
 

 In September, 1924, the Chicago Lumber & Coal Company obtained a writ of ii. fa. in execution of the Bailey judgment, and seized funds of the Louisiana & Northwest Railroad Company in the Homer National Bank, making the bank garnishee. The railroad company obtained a writ of injunction arresting execution of the judgment on the ground that it was prescribed by the lapse of 10 years from the day on which it was rendered. Nearly 14 years had elapsed since the rendition of the judgment, and no suit had been brought to revive it. The Chicago Lumber & Coal Company pleaded in defense of the injunction suit (1) that, in the suit of Hunter, Receiver, v. Chicago Lumber & Coal Co., 156 La. 19, 100 So. 35, the receiver acknowledged the existence and amount of the judgment, ,and thereby interrupted the prescription; (2) that the effect of the suit of the receiver was to prevent execution of the judgment and thereby to suspend the prescription ; and (3) that the receivership of the railroad company also had the effect of suspending prescription’of the judgment. There was judgment for the railroad company, declaring the Bailey judgment prescribed, and ordering it canceled. The- Chicago Lumber & Coal Company has appealed from the decision.
 

 Opinion.
 

 The' law on the subject is in article 3547 . of the Civil Code, viz.:
 

 
 *581
 
 “All judgments for money, whether rendered within or without the state, shall be prescribed by the lapse of ten years from the rendition of such judgments. Provided, however, that any party interested in any judgment may have the same revived at any time before it is prescribed, by having a citation issued according to law, to the defendant or his representative, from the court which rendered the judgment, unless defendant,. or his representative show good cause why the judgment should
 
 not
 
 be revived, and if such defendant be absent and not represented, the court may appoint a curator ad hoc to represent him in the proceedings, upon which curator ad hoc the citation shall be served.
 

 “Any judgment revived as above provided, shall continue in full foree for ten years from the date of the order of court reviving the same, and any judgment may be revived as often as the party or parties interested may desire.”
 

 The article of the Code was originally enacted as Act 274 of 1853, p. 250. Theretofore debts that were reduced to judgment were not subject to the laws of prescription. Yfhen it was enacted that judgments should prescribe or expire at the end of 10 years from their rendition, the Legislature provided the method by which a judgment creditor might prevent the prescription or expiring of his judgment. We have no doubt that the method provided was intended to be the only method of preventing the prescription of a judgment.
 

 A judgment for money does not create a debt; it only recognizes the obligation and makes it executory. Succession of Anderson, 33 La. Ann. 581; Thomas v. Guilbeau, 35 La. Ann. 927; Kinder v. Lyons, 38 La. Ann. 713; Lalane v. Payne, 42 La. Ann. 155, 7 So. 483. A judgment debtor may take the debt itself out of prescription or prevent or interrupt tlie prescription by acknowledging or promising to pay the debt even though the judgment he allowed to prescribe. That is made plain by tbe law which excludes parol evidence for the purpose. The first paragraph of article 2278 (originally enacted as the Act approved March 18, 1858, p. 148, and amended by Act 121 of 1886, p. 219), declares that parol evidence shall not be received to prove an acknowledgment . or promise to pay any judgment, sentence or decree of any court for. the purpose of taking the judgment, sentence or decree out of prescription, or to revive the same after it is prescribed.
 

 . [3] In this case, there was no ackowledgment of the debt, or promise to pay it, by the railroad company or the receiver. On the contrary, the contention of the railroad company, in the suit of Bailey v. Louisiana & Northwest Railroad Co. et. al., 129 La. 1029, 57 So. 325, and in the suit of the Louisiana & Northwest Railroad Co. v. Athens Lumber Co., 134 La. 788, 64 So. 714, L. R. A. 1915B, 856, and the contention of the receiver in the suit of Hunter, Receiver, v. Chicago Lumber
 
 &
 
 Coal Co., 156 La. 19, 100 So. 35, was that the Athens Lumber Company was the principal debtor, and was obliged to indemnify the railroad company if tbe latter should have to pay the judgment. In the two suits last mentioned, the contention was that the Chicago Lumber & Coal Company had committed a fraud upon the railroad company by taking over tbe judgment in Whiting’s name to prevent execution against the Athens Lumber Company. The Chicago Lumber
 
 &
 
 Coal Company owned 77 per cent, of the capital stock of the Athens Lumber Company, and was tbe principal creditor of the company, which was insolvent. ' The purpose of preventing execution against the Athens Company was to liquidate the company’s affairs without paying the Bailey judgment. In fact, the stockholders of the Athens Lumber Company—of whom the Chicago Lumber & Coal Company represented 77 per cent.—did wind up the affairs of the Athens Lumber Company and put it out of business while tbe Chicago Lumber
 
 &
 
 Coal Company held the Bailey judgment. The receiver alleged in his suit that the Athens Lumber Company was a “subsidiary” of the Chicago Lumber & Coal Company; the pur
 
 *583
 
 pose of the suit being to show that, as between the railroad company and the Athens Lumber Company, or the. Chicago Lumber
 
 &
 
 Coal Company, the railroad company did not .owe the judgment, because of the alleged indemnity contract. The receiver’s acknowledgment of the existence and amount of the judgment therefore was not an acknowledgment of any debt or obligation to the Athens Lumber Company or the Chicago Lumber & Coal Company. It was decided in the suit of Hunter, Receiver, v. Chicago Lumber & Coal Co. that there was no fraud in the transaction by which the Chicago Lumber & Coal Company acquired the Bailey judgment. We relate the facts—which appear in the report of the decision, 156 La. pages 29-32, 100 So. 35—merely to show that the receiver for the railroad company did not. acknowledge, in his suit against the Chicago Lumber & Coal Company, that the Bailey judgment represented an obligation of the railroad company to the holder of the judgment.
 

 If a judgment debtor makes a written acknowledgment or promise to pay the debt, he thereby interrupts prescription of the. debt; but if the judgment creditor in such case allows his judgment to prescribe, by failing to revive it in the way provided by article 3547 of the Civil Code, his only remedy is to sue on the debt, as evidenced by the acknowledgment or promise to 'pay. The acknowledgment ' in such case does not “revive” the judgment.
 

 The prescription of 10 years wjts not interrupted or suspended by the suit of Hunter, Receiver, v. Chicago Lumber & Coal Co. The receiver’s suit may have prevented execution of the judgment, but it did not forbid a revival of the judgment in the way provided by the Code. The 10 years’ prescription, .by which judgments for money are extinguished, commences “from the rendition of kich judgments,” which means, not from -the date when the judgment becomes final, but from the date on which it is rendered. And it is well settled that the prescription is not suspended by the taking of an appeal, either suspensive or devolutive, or during the delays allowed for an appeal, or for an application for rehearing, or during the pendency of an application for rehearing. Arrowsmith v. Durell, 21 La. Ann. 295; Walker v. Succession of Hays, 23 La. Ann. 176; Byrne, Vance & Co. v. Garrett, 23 La. Ann. 587; Samory v. Montgomery, 27 La. Ann. 50; Crusel v. Tierce, 150 La. 893, 91 So. 288.
 

 Appellant cites and relies upon the rulings in Succession of Patrick, 30 La. Ann. 1071; Calhoun v. Levy, 33 La. Ann. 1296; Levy v. Calhoun, 34 La. Ann. 413; Succession of Saunders, 37 La. Ann. 769; Lalane v. Payne, 42 La. Ann. 152, 7 So. 481; and Duchenne v. Board of Liquidation, 51 La. Ann. 1142, 26 So. 55.
 

 The doctrine of the decision in the Succession of Patrick, 30 La. Ann. 1071, has been construed, erroneously, to mean that the method provided in article 3547 of the Civil Code for the revival of a judgment, or for preventing its being prescribed, is not the only method by which a judgment may be revived, or by which prescription of the judgment may be prevented. But a careful reading of the decision shows .that what Justice Egan, the author of the majority opinion, had in mind was not the revival of the judgment but the interruption of prescription of the debt evidenced by the judgment. ' That is .explained in the syllabus, viz.:
 

 “The law of this state authorizing the revival of judgments was not intended to provide any different mode of interrupting prescription of judgments from those applicable to other forms of -debt, but was only intended to prevent
 
 the prescription of judgment debts,
 
 and continue them in force for ten years from the date of the judgment of revival. The prescription of
 
 a debt evidenced by a judgment,
 
 can be interrupted in the same modes as the prescription of debts evidenced in any other way, except, that the acknowledgment of
 
 the judgment debt
 
 by the debtor must be in writing.
 

 
 *585
 
 “The written acknowledgment, or judicial admission of
 
 a judgment debt
 
 of a succession, made by the executor before
 
 the debt
 
 is prescribed, will interrupt prescription.” (The italics are ours.)
 

 -Tile decree in the Succession of Patrick, overruling the plea of prescription of 10 years against the judgment held by Mrs. Carroll, which plea was filed originally in the Supreme Court, was correct, because, within the ten years from the rendition of the judgment, the court had rendered a new judgment in favor of Mrs. Carroll, ordering the executor of the succession of Patrick to pay Mrs. Carroll the amount of her judgment. The original judgment held by Mrs. Carroll as execbtrix of the Succession of Soniat was rendered on the 4th of' January, 1868. We quote now from pages 1076 to 1078 of the official report of the decision (30 La. Ann.) viz.:
 

 “On the 5th of March, 1875, the executor of Patrick filed a provisional account and tableau, from which the Soniat judgment, claimed .and held by Mrs. Carroll, executrix, was altogether omitted. On the 21st of April, 1875, she filed an opposition asking that she be placed on the tableau as a judgment creditor, with the proper rank and privilege. There was judgment in the parish court on the 16th of October, 1876; and on appeal in the Supreme Court, April 16, 1877, the opposition was sustained after a vigorous contest, and the existence and ownership of the judgment in question was decreed in favor of the same opponent, contradictorily with the executor of Patrick, who was ordered to file a new and amended tableau, and to place upon it said judgment. Accordingly an amended account and tableau was filed by the executor on the 30th of July, 1877, and the judgment of the opponent was recognized and placed upon it; at the same time, however, the executor of Dr. Patrick alleged the rendition in favor of the succession of a judgment versus Mrs. Ellen G. Patrick, with which he claimed to compensate to its amount that of the opponent, Mrs. Carroll; and also alleged that since the decree of this court, before recited, he had instituted suit in the third district court of New Orleans, to revoke and set aside the transfer to Mrs. Carroll of the Soniat judgment, which he claimed rightfully to belong to Mrs. Patrick, the judgment debtor of the succession, and asked that further proceedings in the matter of account and tableau be stayed till the determination of the revocatory action in the third district court before mentioned. * * *
 
 It was only the
 
 transfer
 
 to
 
 Mrs. Carroll which was attacked as simulated) fraudulent, and illegal, and the right claimed by the executor to compensate it with the same demand not then in judgment against Mrs. Ellen G. Patrick. It was on these Issues that our former decree, of April, 1877, was. rendered against the executor, and in favor of the opponent, as heretofore stated, * * * and we hav.e now sufficiently reviewed the facts of this case to make it manifest that not only by the most solemn judicial allegations and admissions of the executor—who represents both the succession and-the creditors—but, also, "by the decree of this court on the former opposition between the same parties, all within less than ten years from its rendition on the 4th of January, 1868, the judgment and debt of the -opponent, Mrs. S. E. Carroll, now wife of Noble, has been taken out of prescription, which has thus, both by judicial proceeding to demand and enforce the debt, and by the most solemn admissions and assertiohs by the executor of its existence, been interrupted.”
 

 The distinction between the revival of a judgment, by the method provided in article 3547 of the Code, and the interruption of prescription of the debt evidenced by tne judgment is clearly recognized and repeated over and over again in the opinion that was rendered in the Succession of Patrick. We take the following pertinent excerpts from the official report, pages 1072-1075 (30 La. Ann.) viz.:
 

 “We may here remark of this peculiar statutory action that it is not to be confounded with the interruption of prescription, which when the statute is complied with is not interrupted. in the sense and meaning of the law, but is considered as having never been, as being altogether prevented by the action for revival. This is manifest not only from the fact that this prevention of prescription is provided for by the proviso of the very act which creates it under other conditions, but because by the terms of the law itself, unlike the interruption of prescription, the time during which the judgment shall continue in force is counted not' from the date of service of citation,- but ‘from
 
 *587
 
 tlio date of the order of court reviving the judgment.’ It is, however, argued that because the law provides a means' for the revival of judgments, and for thus continuing them in force, this action of revival is the only means of avoiding the effect of the lapse of time fixed in the law for their prescription. In other words, that
 
 debts thus ascertained
 
 and decreed to bo due in tlio most solemn form known to the law,” etc. ‘‘It is then both in the scope of inquiry and in its effects wholly unlike the ordinary action upon debts and claims not in judgment, and * * * was intended altogether to prevent the prescription of debts evidenced in the solemn form of judgments and to ‘continue them in force’ in the language of the statute, not for ten years from the date of citation, which as to ordinary debts interrupts prescription, but for ‘ton years from the date of the order of court reviving the same.’ * * *
 

 / ‘‘If, then, the proceeding under the statute was intended to revivify and ‘continue in force’
 
 ab origine
 
 the judgment, and with no other scope or object, how can it be said to be at all events the only and exclusive means of ‘interrupting’ the prescription of
 
 the debt evidenced by the judgment,
 
 a subject and matter for which the law at the time of the passage of the act under discussion made other and distinct provision? * * * It is manifest that the act of 1853 providing for the prescription and revival of judgments was not then considered or intended to exclude any competent evidence of the acknowledgment of
 
 a debt in the form of a judgment more than if in^any other form.”
 
 (The italics are ours.)
 

 If the ruling in the succession of Patrick had to be construed as maintaining that a judgment may be revived for ten years, and kept alive and executory, by the debtor’s acknowledgement of the' existence and amount of the judgment, we would feel constrained to overrule the decision.
 

 Wliat was said in Calhoun v. Levy, 33 La. Ann. 1296, with regard to the doctrine of the Succession of Patrick, was withdrawn, when the court decided the case on rehearing. It w.as said (page 1304):
 

 “We find it unnecessary, in this case, to pass upon the plea of prescription at all, and shall not do so ; but the foregoing considerations demonstrate the propriety of annulling that por-, tion of the judgment áppealed from which maintains the plea, leaving the parties at liberty to raise that issue in any suit which may hereafter be brought to revive the judgment.”
 

 Levy v. Calhoun, 34 La. Ann. 413, maintains merely that citation in a suit to revive a judgment, though issued from an incompetent court, interrupts prescription of the judgment. We express no opinion as to whether the doctrine is right or wrong, for it is not relevant to the issue }n the present suit.
 

 In the Succession of Saunders, 37 La. Ann. 770, the judgment as to which the prescription of 10 years was pleaded, was not, strictly speaking, a judgment for money. It was a judgment recognizing the widow’s usufruct of one-ninth of the property of the succession. What was said by way of interpretation of the ruling in the Succession of Patrick was therefore not authoritative.
 

 In Lalane v. Payne, 42 La. Ann. 152, 7 So. 481, the question now before us was not at issue because, as was said in the opinion, the attorney for the plaintiff, judgment creditor, conceded “that the prescription of a judgment .may be interrupted iby other means than a suit to revive.” We concede that prescription of a debt evidenced by a judgment may be interrupted by other -means than a suit to revive.
 

 In Duchenne v. Board of Liquidation, 51 La. Ann. 1142, 26 So. 55, the court construed the doctrine of the Succession of Patrick to mean, as we construe it now, that article 3547 of the Code, in providing a means for reviving a judgment, did not exclude other means of interrupting prescription of a debt evidenced by a judgment.
 

 The plea' that the receivership of the railroad company had the effect of interrupting prescription of the judgment is not well founded. The holder of the judgment could have proceeded against the receiver to revive the judgment. The article of the Code, in terms, declares that the citation in such case may issue “to the defendant or his rep
 
 *589
 
 resentative.” The federal and state receivership statutes reserve to creditors of a corporation their right of action against the receiver.
 

 The judgment appealed from is affirmed.
 

 THOMPSON, J., recused.